**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Derrick DAVIS, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 25, 2010.

Filed Feb. 23, 2011.

Reargument Denied May 4, 2011.

392

Burton A. Rose, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: FORD ELLIOTT, P.J., GANTMAN and DONOHUE, JJ.

OPINION BY DONOHUE, J.:

Appellant, Derrick Davis ("Davis"), appeals from the August 12, 2009 judgment of sentence following his convictions of one count each of first degree murder, criminal conspiracy to commit murder ("conspiracy"), attempted murder, aggravated assault, recklessly endangering another person, retaliation against a witness, intimidating a witness, and two counts of possession of an instrument of crime.[1] For the reasons that follow, we affirm.

On March 12, 2007, Davis was arrested and charged in connection with the October 3, 2004 shooting death of Terrence Barron ("Barron") and the August 5, 2006 shooting of William Flournoy ("Flournoy"), the only eyewitness to Barron's murder. Davis filed a motion to suppress Flournoy's identification of him as the shooter in both incidents, and after holding an evidentiary hearing the trial court denied the motion. On January 26, 2009, Davis and Christopher Willis, his alleged co-conspirator in Barron's death, were tried as co-defendants at a jury trial. The jury convicted Davis of the above-referenced crimes.

On August 12, 2009, Davis received the following concurrent sentences: life in prison (for first degree murder), 10–20 years of incarceration (for conspiracy), 10–20 years of incarceration (for attempted murder), 1–2 years of incarceration (for retaliation against a witness), 5–10 years of incarceration (for intimidating a witness), and 1–2 years of incarceration (for each of two counts of possession of an instrument of crime). He received no further penalty for aggravated assault and for recklessly endangering another person. This timely appeal followed. Davis filed a statement of matters on appeal, and the trial court filed a Pa.R.A.P. 1925(a) opinion.

On appeal, Davis raises two issues for our consideration:

1. Did the lower court err in refusing to grant suppression of the identification of [Davis] by William Flournoy?

2. Did the lower court err in refusing to permit impeachment of William Flournoy concerning his prior convictions for criminal mischief and defiant trespass?

Davis' Brief at 3.

■ For his first issue on appeal, Davis challenges the trial court's denial of his motion to suppress Flournoy's identifications of him as one of Barron's killers and as the man who later shot Flournoy. Specifically, Davis contends that a suggestive photo array required suppression. Davis' Brief at 7. Although we conclude that the photo array was suggestive, we disagree that suppression of the identification was warranted.

■ We adhere to the following scope and standard of review for an order denying a suppression motion:

We may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

An appellate court, of course, is not bound by the suppression court's conclusions of law. However, it is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony.

---

1. 18 Pa.C.S.A. §§ 2502(a), 903(a)(1), 901(a), 2702(a), 2705, 4953(a), 4952(a)(1), 907(a).

*Commonwealth v. Anthony,* 977 A.2d 1182, 1185 (Pa.Super.2009) (citations and quotations omitted).

■ "In reviewing the propriety of identification evidence, the central inquiry is whether, under the totality of the circumstances, the identification was reliable." *Commonwealth v. Moye,* 836 A.2d 973, 976 (Pa.Super.2003), *appeal denied,* 578 Pa. 694, 851 A.2d 142 (2004). While the suggestiveness of the identification procedure is one relevant factor in determining the reliability of an identification, "[s]uggestiveness alone will not forbid the use of an identification, if the reliability of a subsequent identification can be sustained." *Commonwealth v. McGaghey,* 510 Pa. 225, 228, 507 A.2d 357, 359 (1986). Suggestiveness arises when the police employ an identification procedure that emphasizes or singles-out a suspect. *See Simmons v. United States,* 390 U.S. 377, 383, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968) (holding that the police showing several photos of suspects to eyewitnesses was suggestive).

Here, we agree with Davis that the police used a suggestive photo array when they showed Flournoy just three photos, one of which depicted Davis. Photo Array, 1/31/07. The other two pictures consisted of a man named "Victor," whom Flournoy already knew, and a much older, bald man whose appearance differed markedly from both Davis and Flournoy's prior description of the suspect. *Id.;* N.T., 1/22/09, at 57–58. Under these circumstances, we conclude that the array improperly emphasized Davis and was therefore suggestive.

■ Accordingly, our inquiry must focus upon whether the identifications were nevertheless reliable. To establish reliability in the wake of a suggestive identification, the Commonwealth must prove, through clear and convincing evidence, the existence of an independent basis for the identification. *Commonwealth v. Fisher,* 564 Pa. 505, 523, 769 A.2d 1116, 1127 (2001), *cert. denied, Fisher v. Pennsylvania,* 535 U.S. 906, 122 S.Ct. 1207, 152 L.Ed.2d 145 (2002). An independent basis is established when "the in-court identification resulted from the criminal act and not the suggestive [identification procedure]." *McGaghey,* 510 Pa. at 228, 507 A.2d at 359. To determine if an identification resulted from the criminal act (and, therefore, has an independent basis), the trial court must consider the following factors:

[T]he opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Id.* (citation omitted). With this standard in mind, we will review the trial court's finding that Flournoy's identification of Davis had an independent basis. N.T., 1/22/09, at 102.

The record sufficiently supports the trial court's finding. Immediately after Barron's murder, Flournoy described Davis in detail to police as "about 20 years old, black male, dark skin, braids, beige khaki shirt and pants and beige timberland boots, about 5′5″ [with] a medium build and no facial hair." Police Report, 10/4/03, at 3; N.T., 1/22/10, at 26–27. Flournoy added that "I see [sic] him around, but I don't know his name; he [has] braids and he [is] from Paxon Street." Police Report, 10/4/03, at 3; N.T., 1/22/10, at 26. Additionally, Flournoy's description of Davis remained unchanged throughout the pendency of this case. N.T., 1/22/09, at 66–67; N.T., 1/28/09, at 31–33; N.T., 1/29/09, at 11–12, 24–25. Flournoy also testified that on the night of Barron's murder, he was

not impaired by alcohol or drugs and he was several feet from Davis when he saw Davis in the lighted dining area of Barron's residence. N.T., 1/28/09, at 11–15, 19–22, 25–26, 115–18, 119–22, 125–28; N.T., 1/29/09, at 34–35. Finally, when Flournoy identified Davis for police three years after the murder, he did so quickly and decisively, although Davis by then had a beard and no braids. N.T., 1/22/09, at 56–58, 62–63, 67 ("That's him. That's the one that shot me and shot and killed Terrance Barron."). Thus, the record supports the trial court's finding that the identification had an independent basis and was admissible. Davis is not entitled to relief on this basis.

■ For his second issue on appeal, Davis claims that the trial court erred in precluding the impeachment of Flournoy with his prior convictions for criminal mischief and defiant trespass.[2] Davis argues that pursuant to Rule 609(a) of the Pennsylvania Rules of Evidence, he was entitled to attack Flournoy's credibility using these prior convictions because they both involve dishonesty or false statement. Davis' Brief at 23.

■ "The determination of the scope and limits of cross-examination are within the discretion of the trial court, and we cannot reverse those findings absent a clear abuse of discretion or an error of law." *Commonwealth v. Brown*, 449 Pa.Super. 346, 673 A.2d 975, 978 (1996) (citing *Commonwealth v. Nolen*, 535 Pa. 77, 82, 634 A.2d 192, 195 (1993)), *appeal denied*, 545 Pa. 675, 682 A.2d 306 (1996). "[A]n abuse of discretion is not a mere error in judgment, but, rather, involves bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law." *Commonwealth v. Bradford*, 2 A.3d 628, 632 (Pa.Super. 2010). Furthermore,

when a "trial court indicate[s] the reason for its decision our scope of review is limited to an examination of the stated reason." *Commonwealth v. Sanchez*, 848 A.2d 977, 984 (Pa.Super.2004) (citations omitted). Here, the trial court precluded Davis' impeachment of Flournoy with his convictions for criminal mischief and defiant trespass on the grounds that these crimes do not involve dishonesty or false statement.

"For the purpose of attacking the credibility of any witness, evidence that the witness has been convicted of a crime, whether by verdict, or by plea of guilty or nolo contendere, shall be admitted if it involved dishonesty or false statement." Pa.R.E. 609(a). "Crimes involving dishonesty or false statement [are] commonly referred to as *crimen falsi* crimes." *Commonwealth v. Moser*, 999 A.2d 602, 607 (Pa.Super.2010). *"[C]rimen falsi* involves the element of falsehood, and includes everything which has a tendency to injuriously affect the administration of justice by the introduction of falsehood and fraud." *Commonwealth v. Jones*, 334 Pa. 321, 323, 5 A.2d 804, 805 (1939).

■ "[W]hen deciding whether a particular offense is *crimen falsi*, one must address both the elemental aspects of that offense *and* the conduct of the defendant which forms the basis of the anticipated impeachment." *Commonwealth v. Coleman*, 445 Pa.Super. 199, 664 A.2d 1381, 1384 (1995), *appeal denied*, 545 Pa. 675, 682 A.2d 306 (1996) (emphasis in original). Accordingly, this Court employs a two-step procedure to determine whether a crime is *crimen falsi*. *Commonwealth v. Cascardo*, 981 A.2d 245, 255 (Pa.Super.2009). First, we examine the essential elements of the offense to determine if the crime is inherently *crimen falsi*—whether dishonesty or

**2.** 18 Pa.C.S.A. §§ 3304, 3503(b)(1).

false statement are a necessary prerequisite to commission of the crime. *Id.* Second, if the crime is not inherently *crimen falsi,* this Court then inspects the underlying facts that led to the conviction to determine if dishonesty or false statement facilitated the commission of the crime. *Id.* The burden of proof is upon the party offering the conviction during cross-examination. *Commonwealth v. Boyd,* 463 Pa. 343, 353, 344 A.2d 864, 869 (1975).

Criminal mischief is defined by statute as follows:

**18 Pa.C.S.A. § 3304. Criminal mischief.**

    (a) A person is guilty of criminal mischief if he:

        (1) damages tangible property of another intentionally, recklessly, or by negligence in the employment of fire, explosives, or other dangerous means listed in section 3302(a) of this title (relating to causing or risking catastrophe);

        (2) intentionally or recklessly tampers with tangible property of another so as to endanger person or property;

        (3) intentionally or recklessly causes another to suffer pecuniary loss by deception or threat;

        (4) intentionally defaces or otherwise damages tangible public property or tangible property of another with graffiti by use of any aerosol spray-paint can, broad-tipped indelible marker or similar marking device;

        (5) intentionally damages real or personal property of another; or

        (6) intentionally defaces personal, private or public property by discharging a paintball gun or paintball marker at that property.

18 Pa.C.S.A. § 3304(a).

In his brief, Davis references section 3304(a)(3) to support his contention that criminal mischief is inherently *crimen falsi,* arguing that this provision "condemns the behavior of the defendant when he intentional[ly] or recklessly causes another to suffer punitive loss *by deception or threat.*" Davis' Brief at 27 (emphasis in original). Based upon our research, it does not appear that any Pennsylvania appellate court has ruled on the issue of whether section 3304(a)(3) is inherently *crimen falsi.* We need not address that issue here, however, because the certified record on appeal contains no evidence or information to establish that Flournoy was convicted of criminal mischief pursuant to section 3304(a)(3). Instead, the record reflects only that Flournoy was convicted of an unspecified form of criminal mischief and does not delineate which section of 3304(a) Flournoy violated. Five of the six subsections under section 3304(a) do not contain the phrase "by deception or threat," and each prohibits various types of property damage. As a result, only section 3304(a)(3) is even arguably *crimen falsi,* and there is no evidence of record to establish that Flournoy violated that particular provision of the statute. *Commonwealth v. Chmiel,* 585 Pa. 547, 603–04, 889 A.2d 501, 534 (2005) (holding that to impeach a witness with a crime, the record must establish that the witness had been convicted of that crime), *cert. denied,* 549 U.S. 848, 127 S.Ct. 101, 166 L.Ed.2d 82 (2006). Accordingly, we cannot conclude that the trial court erred in precluding Davis from impeaching Flournoy with an unspecified conviction for criminal mischief.

▮ Davis next argues that the trial court abused its discretion by barring him

from impeaching Flournoy with his conviction for defiant trespass. In this regard, Davis relies on the case of *Commonwealth v. Walker*, 384 Pa.Super. 562, 559 A.2d 579 (1989), in which a panel of this Court held that the crime of criminal trespass is inherently *crimen falsi*. Davis contends that since criminal trespass is inherently *crimen falsi*, defiant trespass must also be inherently *crimen falsi*, since both crimes require that the trespass in question be committed with knowledge of a lack of license or privilege to enter. Davis' Brief at 26. For the following reasons, we disagree.

Criminal and defiant trespass are defined by statute in 18 Pa.C.S.A. § 3503:

(a) Buildings and occupied structures.—

(1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he:

(i) enters, gains entry by subterfuge or surreptitiously remains in any building or occupied structure or separately secured or occupied portion thereof; or

(ii) breaks into any building or occupied structure or separately secured or occupied portion thereof.

(2) An offense under paragraph (1)(i) is a felony of the third degree, and an offense under subparagraph (1)(ii) is a felony of the second degree.

(3) As used in this subsection:

"Breaks into." To gain entry by force, breaking, intimidation, unauthorized opening of locks, or through an opening not designed for human access.

(b) Defiant trespasser.—

(1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by:

(i) actual communication to the actor;

(ii) posting in a manner prescribed by law or reasonably likely to come to the attention of intruders;

(iii) fencing or other enclosure manifestly designed to exclude intruders;

(iv) notices posted in a manner prescribed by law or reasonably likely to come to the person's attention at each entrance of school grounds that visitors are prohibited without authorization from a designated school, center or program official; or

(v) an actual communication to the actor to leave school grounds as communicated by a school, center or program official, employee or agent or a law enforcement officer.

(2) Except as provided in paragraph (1)(v), an offense under this subsection constitutes a misdemeanor of the third degree if the offender defies an order to leave personally communicated to him by the owner of the premises or other authorized person. An offense under paragraph (1)(v) constitutes a misdemeanor of the first degree. Otherwise it is a summary offense.

18 Pa.C.S.A. § 3503(a), (b).

In *Walker*, a jury convicted the appellant of sexual crimes after the trial court precluded him from impeaching the complaining witness with her prior conviction for criminal trespass. On appeal, a panel of this Court vacated the judgment of sentence and remanded for a new trial. In so doing, the opinion reasoned as follows:

The crime of criminal trespass involves either entering or remaining in a place, while knowing that one is not licensed or privileged to do so. Because the offense involves the commission of an act that

the offender *knows* he or she is not licensed or privileged to do, it reflects adversely on the offender's honesty. Moreover, we note that criminal trespass is similar to burglary, which this Commonwealth has long recognized as a crime that involves dishonesty. Accordingly, we conclude that criminal trespass is an offense in the nature of *crimen falsi*, and thus the trial court should have allowed appellant to impeach the complainant with her 1986 conviction. *Walker*, 559 A.2d at 582–83 (emphasis in original).

Davis' reliance on *Walker* is misplaced, as the case lacks any precedential value. Because one member of the three-judge panel in *Walker* dissented and a second concurred only in the result, the opinion represented the views of a single judge. For any principle of law expressed in a decision of this Court to be considered precedent, it must command a majority of judges voting both as to disposition and the principle of law expressed. *McDermott v. Biddle*, 436 Pa.Super. 94, 647 A.2d 514, 524 n. 8 (1994), reversed on other grounds, 544 Pa. 21, 674 A.2d 665 (1996). Accordingly, a decision authored by just one member of a three-member Superior Court panel, with the remaining two judges either dissenting or concurring in the result, is of no precedential value. *See, e.g., Gaudio v. Ford Motor Co.*, 976 A.2d 524, 537 n. 5 (Pa.Super.2009); *Commonwealth v. Blee*, 695 A.2d 802, 805 n. 8 (Pa.Super.1997). In *Walker*, Judge Cercone concurred in the result and Judge Montemuro dissented, and therefore the principles of law set forth in Judge Hoffman's opinion have no binding precedential effect.

On two occasions, panels of this Court have cited *Walker* with approval. In one of these cases, the citation was mere *obiter dicta*, as the case did not involve any issue related to cross-examination using a prior conviction for criminal trespass. *Commonwealth v. Harris*, 442 Pa.Super. 116, 658 A.2d 811, 812 (1995) (holding that the crime of hindering apprehension is not inherently *crimen falsi* ). In the second case, *Commonwealth v. Hall*, 867 A.2d 619 (Pa.Super.2005), a panel of this Court cited *Walker* in support of its conclusion that it was not ineffective assistance of counsel to fail to object to cross-examination of a defense witness on a prior conviction for criminal trespass because "criminal trespass is an offense in the nature of *crimen falsi.*" *Id.* at 638. In so ruling, however, the panel in *Hall* only adopted the *holding* in *Walker* (*i.e.*, that criminal trespass is *crimen falsi* ) and did not also adopt Judge Hoffman's *reasoning* for his decision (*i.e.*, that the *mens rea* required for criminal trespass includes knowledge of lack of license or privilege). As a result, *Hall* provides us with no basis here to apply Judge Hoffman's reasoning in *Walker* to the crime of defiant trespass.

Moreover, even if we were to conclude that the *Walker* decision has any binding effect in the case *sub judice*, we would nevertheless decline to extend its reasoning to the crime of defiant trespass. To be found guilty of criminal trespass, a defendant typically either "gains entry by subterfuge or surreptitiously remains in any building or occupied structure," or otherwise breaks into the structure by force. 18 Pa.C.S.A. § 3503(a). Defiant trespass, on the other hand, does not require the defendant to act with "subterfuge," "surreptitiously," or through the use of force. Instead, the crime of defiant trespass merely requires that a person enter a place with knowledge of a lack of license or privilege to do so. While doing so demonstrates some lack of respect for the property rights of others, in our view it does not of necessity involve either dishon-

esty or false statement. In addition, mere knowledge that an act is illegal does not constitute a proper basis for designating the resulting crime as inherently *crimen falsi,* as knowledge of wrongdoing has never been our guidepost in categorizing *crimen falsi* crimes. *See, e.g., Commonwealth v. Correa,* 423 Pa.Super. 57, 620 A.2d 497, 503 (1993) (holding that the crime of possession of a controlled substances is not *crimen falsi* even though statute requires "knowing" or "intentional" possession), *appeal denied,* 536 Pa. 638, 639 A.2d 24 (1993).

Having determined that defiant trespass is not inherently *crimen falsi,* we must also decide whether dishonesty or false statements facilitated the commission of Flournoy's defiant trespass. *Cascardo,* 981 A.2d at 255. As with Flournoy's conviction for criminal mischief, however, Davis did not introduce any factual predicate to establish that Flournoy's conduct in committing the crime of defiant trespass was based upon *crimen falsi.* In the absence of any foundation to support a finding that Flournoy's conduct in connection with the prior conviction was *crimen falsi,* we cannot conclude that the trial court's decision to prohibit the cross-examination was in error. *Coleman,* 664 A.2d at 1384–85 ("There is simply no basis in the record before us for concluding that in this case, the complaining witness' prior criminal conviction was premised on conduct displaying dishonesty or false statement which would indicate the commission of *crimen falsi.*"), *appeal denied,* 545 Pa. 675, 682 A.2d 306 (1996). Consequently, the trial court did not err in precluding cross examination of Flournoy on the defiant trespass conviction.

Judgment of sentence affirmed.