J-S78025-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KENNETH N. JONES JR. | : | |
| | : | |
| Appellant | : | No. 3541 EDA 2017 |

Appeal from the Judgment of Sentence Entered May 30, 2017
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0002225-2016

BEFORE:   LAZARUS, J., McLAUGHLIN, J., and STEVENS*, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:                 **FILED APRIL 08, 2019**

Kenneth N. Jones, Jr. appeals from the judgment of sentence entered following his multiple convictions for robbery and related offenses. Jones contends the trial court erred in denying his motion to suppress the pretrial identification of Jones by one of the robbery victims. We affirm.

Jones' charges arose from three gunpoint robberies committed on the morning of December 8, 2015. Jones filed a pre-trial motion to suppress the identification of Jones by one of the victims, Benigno Ojeda-Luna.[1] At the suppression hearing, Detective Charles Leeds of the Norristown Police Department testified that he investigated the robbery of Ojeda-Luna, which

---

*   Former Justice specially assigned to the Superior Court.

[1] Jones also moved to suppress identifications by other victims, but as he has not appealed the court's ruling on the suppression of those identifications, we shall not discuss them.

had taken place at 3:40 a.m. N.T., 3/6/17 (Suppression Hearing), at 29. Shortly following the robbery, Ojeda-Luna learned that the debit card taken by the robber had been used at a Walmart store and a Wawa convenience store, and he and Detective Leeds went to the bank and obtained the financial records relating to the fraudulent uses of his debit card. *Id.* at 46.

Detective Leeds testified that ten days after the robbery, he showed Ojeda-Luna a photograph array containing a photograph of Jones' face. *Id.* at 42, 45. As Ojeda-Luna speaks Spanish, an interpreter was also present. *Id.* at 32, 43-44. Ojeda-Luna did not identify anyone from the array as the perpetrator of the robbery. *Id.* at 45. The photo array was not entered into evidence at the suppression hearing.

Detective Leeds testified that a "couple of minutes" after he showed Ojeda-Luna the photo array containing Jones' photograph, he showed Ojeda-Luna two additional images of Jones—one from a Walmart, and one from a Wawa—and a surveillance video from the Wawa. *Id.* at 30-31, 45, 47. The images were introduced into evidence at the suppression hearing. *Id.* at 30-31; Exs. CS-3, CS-4. The video was not entered into evidence, but Detective Leeds testified the video had been five or ten seconds long, and the image of Jones at the Wawa was extracted from the video. N.T. (Suppression Hearing) at 45-46. The image shows Jones entering the Wawa. *Id.* at 46.

Detective Leeds testified that neither photograph was marked with the words "Walmart" or "Wawa," and, according to Detective Leeds, the photographs and video were not labeled in a way to describe their source or

content. *Id.* at 33. There were no pictures or other information displayed in the area indicating the source of the photos. *Id.* at 32. Detective Leeds did not indicate to Ojeda-Luna that the person in the photos had been included in the photo array or previously identified or arrested. *Id.* at 33-34. Detective Leeds did not inform Ojeda-Luna that the subject of the photograph was the suspect in the case, or that the police had obtained the images using the information from Ojeda-Luna's bank records. *Id.* at 32-35, 48.

Detective Leeds testified that after viewing the two images and surveillance footage, Ojeda-Luna "almost immediately" identified the subject as the person who robbed him. *Id.* at 37. Ojeda-Luna stated something like, "This is the guy that robbed me, those are his clothes." *Id.* at 34, 49.

Detective Leeds took Ojeda-Luna's written statement. *Id.* at 36-37; Ex. CS-5. In the statement, Ojeda-Luna stated he had been unable to identify the robber in the sequential photo array he was shown that morning because "all the pictures of the faces . . . look alike and it was dark and [he] was scared and [the robber] had a gun to [his] head." Ex. CS-5 at 2. Ojeda-Luna stated he was able to identify the person in the surveillance images and video footage as the robber because Ojeda-Luna "saw [the robber's] entire body and . . . recognized him." *Id.*; *see also* N.T. (Suppression) at 37. The statement continued, "He was the person that robbed me. He was wearing the same clothes." Ex. CS-5 at 2; *see also* N.T. (Suppression) at 37.

At the conclusion of the hearing, Jones argued that the procedures used by the police in showing Ojeda-Luna the still images from the surveillance

- 3 -

footage was suggestive, and that the court should suppress both the evidence of the out-of-court identification and any in-court identification by Ojeda-Luna. *Id.* at 99. The court denied the motion. *Id.* at 125. The court stated it found "there is nothing suggestive about that photo other than it is obviously from somebody entering a convenience store." *Id.* at 118.

At Jones' subsequent jury trial,[2] Ojeda-Luna testified, through an interpreter, regarding the details of the robbery. The prosecutor asked Ojeda-Luna if he would still be able to recognize the person who robbed him, and Ojeda-Luna replied, "Yes, I think so." N.T., 3/7/17 (Trial Day 1), at 70. The prosecutor then asked whether the person was in the courtroom. *Id.* Ojeda-Luna gestured to Jones, and stated, "Could be him[,] because he was dark skinned." *Id.*

The prosecutor asked Ojeda-Luna about the photo array Detective Leeds showed him ten days after the robbery, and Ojeda-Luna testified he had not been able identify anyone in the photo array "[b]ecause all the people in the photos were dark skinned." N.T. (Trial Day 1) at 72. He stated that after being shown the surveillance photos, however, he recognized the subject of those photos as "the same person" who robbed him, "[b]ecause of the clothing that he was wearing. It was the same." *Id.* at 73. Ojeda-Luna elaborated that the men in the photo array "were all very similar in appearance to me, but in the

_____

[2] The instant case, in which Jones was charged with three robberies, was consolidated for trial with another case charging Jones with two other robberies. Jones was acquitted of those two robberies.

other photograph, the camera from the store does show who it was." *Id.* at 85.

The jury convicted Jones of multiple counts of robbery, persons not to possess a firearm, access device fraud, possession of an instrument of crime, receiving stolen property, and recklessly endangering another person.[3] The court thereafter sentenced Jones to serve an aggregate term of 19½ to 39 years' incarceration.

Jones appealed, and presents the following issue:

> Did the trial court erroneously deny [Jones'] motion to suppress the identification of [Jones] by witness Ojeda-Luna where: (1) the witness'[s] opportunity to observe was limited, (2) the police displayed three single photographs of [Jones] to the witness under suggestive circumstances, and (3) the identification occurred after the police engaged in a suggestive preliminary conversation with the witness, and the in court identification was general and tainted by the out of court identification?

Jones' Br. at 9.

Jones argues that the court erred in denying his motion because "showing a single photo of a stranger to a potential eyewitness creates exactly the type of constitutionally defective identification that must be suppressed." *Id.* at 22. Jones argues that at the time Detective Leeds showed him the surveillance images, Ojeda-Luna was aware that the police were investigating the robbery based on the transactions made on his card at a Wawa and Walmart. *Id.* at 25-26. Therefore, showing Ojeda-Luna photos from one

---

[3] 18 Pa.C.S.A. §§ 3701(a)(1)(ii) and (iv), 6105(a)(1), 4106(a)(1)(ii), 907(a), 3925(a), and 2705.

person at those locations impermissibly suggested to Ojeda-Luna that the police believed the subject to be the robber. *Id.* Jones also argues that because Detective Leeds showed Ojeda-Luna the surveillance images after the photo array, Detective Leeds had repetitively displayed Jones' likeness, which additionally suggested Jones was the robber. *Id.* at 24. Jones points out that Ojeda-Luna had not been able to pick him out of the photo array despite having been certain he could identify the robber, and only declared Jones was the robber after being shown the suggestive and repetitive surveillance images. *Id.* at 23-24. Jones further argues that the suggestive out-of-court identification tainted the in-court identification, and that there was no independent, untainted basis on which to allow the in-court identification. *Id.* at 26.

Preliminarily, we address the Commonwealth's argument that Jones waived any challenge to admission of the in-court identification by failing to raise that issue in his Rule 1925(b) Statement. In his Statement, Jones summarized the issue as,

> The trial court erroneously denied [Jones'] motion to suppress the identification of complainant Ojeda-Lunda, where the process employed to secure that identification was unconstitutionally suggestive. After the complainant [Ojeda-]Luna failed to identify [Jones] in a fair photo array, the investigators showed [Ojeda-] Luna surveillance photos and a video snippet, each of which displayed on the face of [Jones].

Statement of Matters Complained of on Appeal, 11/20/17, at 1. The Commonwealth argues that this iteration of the issue makes no mention of

the in-court identification, and thus that portion of his argument is waived. *See* Commonwealth's Br. at 26.[4]

We agree. In the first sentence summarizing the issue, Jones claimed that the court erred in denying his motion to suppress "the" identification of Ojeda-Luna, because "that" identification was made under suggestive conditions. Thus, Jones speaks only of the suppression of one identification— the out-of-court identification. His second sentence likewise references only the out-of-court identification. Jones does not specify that the court erred in allowing the in-court identification, and we therefore conclude that issue is waived. *See* Pa.R.A.P. 1925(b)(4)(ii) (providing statement must identify all pertinent issues with sufficient detail); *Commonwealth v. Treiber*, 121 A.3d 435, 475 (Pa. 2015) (holding issues waived when not raised with specificity in Rule 1925(b) statement); *Commonwealth v. Hansley*, 24 A.3d 410, 415 (Pa.Super. 2011) (stating vague Rule 1925(b) statement is the equivalent of no statement).

We next address to the court's disposition of Jones' motion to suppress the out-of-court identification, which we will reverse only if the record does

---

[4] Jones included a second issue in his Rule 1925(b) statement: that the trial court erroneously denied his post-sentence motion for a new trial because his "convictions were contrary to the weight of the evidence and the erroneous admission of complainant Ojeda-Luna's identification fatally infected the jury's assessment of the evidence regarding the other two robberies." Statement at 1. Jones' post-sentence motion challenged only the weight of the evidence. As Jones has not challenged the weight of the evidence on appeal, we will not address the admission of any identification testimony in relation to the denial of his post-sentence motion.

not support the court's factual findings or if the court erred in its legal conclusions. *Commonwealth v. Stiles*, 143 A.3d 968, 978 (Pa.Super. 2016). Our scope of review "is limited to the evidentiary record that was created at the suppression hearing," *id.*, and of that record, we consider "only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." *Commonwealth v. Jaynes*, 135 A.3d 606, 610 (Pa.Super. 2016) (quoting *Commonwealth v. Williams*, 941 A.2d 14, 26-27 (Pa.Super. 2008) (*en banc*)).

"Suggestiveness arises when the police employ an identification procedure that emphasizes or singles-out a suspect." *Commonwealth v. Davis*, 17 A.3d 390, 394 (Pa.Super. 2011). However, "[a] pretrial identification will not be suppressed unless the facts demonstrate that the identification procedure was so infected by suggestiveness as to give rise to a substantial likelihood of irreparable misidentification." *Commonwealth v. Cousar*, 154 A.3d 287, 306 (Pa. 2017). Whether a pretrial identification was unreliable is not to be determined from suggestiveness in the identification process alone, but from the totality of the circumstances. *Stiles*, 143 A.3d at 978. The court may consider the following factors:

> (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of

certainty demonstrated by the witness at the confrontation; and
(5) the length of time between the crime and the confrontation.

**Commonwealth v. Fisher**, 769 A.2d 1116, 1127 (Pa. 2001). The central

inquiry is whether the identification was reliable. **Davis**, 17 A.3d at 394.

Here, the trial court concluded that the photo display was not unduly

suggestive, based on the totality of the circumstances:

> After he failed to identify anyone in a photo array, Ojeda-Luna
> was shown two still photos and a snippet of video and asked if he
> recognized the person depicted. He was not told that the person
> was the suspect, that he had been previously identified by others
> or any additional information to influence the identification. He
> immediately stated that he recognized the person and that the
> person was wearing the same clothing he had been wearing at the
> time of the robbery.

Trial Court Opinion, filed March 27, 2018, at 6.

We agree with the trial court that the procedure utilized by Detective

Leeds was not so suggestive "as to give rise to a substantial likelihood of

irreparable misidentification." **Cousar**, 154 A.3d at 306. Detective Leeds did

not give Ojeda-Luna any information to suggest that the subject of the photos

had robbed Ojeda-Luna. While Ojeda-Luna was aware that his debit card had

been used at Walmart and Wawa after the robbery, the pictures did not

indicate that they were taken at Walmart or Wawa, and Detective Leeds did

not tell Ojeda-Luna whether they had been acquired using Ojeda-Luna's

banking information. He merely asked Ojeda-Luna whether he recognized the

person shown in the photographs.

Moreover, Ojeda-Luna emphasized to Detective Leeds that he recognized Jones not by his face, but by his "entire body" and clothing. Detective Leeds testified that Ojeda-Luna recognized Jones' clothing "almost immediately" upon viewing the surveillance images. Ex. CS-5 at 2; N.T. (Suppression) at 37. Ojeda-Luna's consistent admission that he could not discern the face of the robber amongst other similar faces and the immediacy and certainty with which he recognized Jones' clothing add reliability to his identification of that clothing. We thus hold that the trial court did not err in denying Jones' motion to suppress.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/8/19