J-A08006-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TONY BANKS | : | |
| | : | |
| Appellant | : | No. 1858 WDA 2017 |

Appeal from the Judgment of Sentence November 16, 2017
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):  CP-02-CR-0002492-2017,
CP-02-CR-0007772-2016

BEFORE:  PANELLA, P.J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY PANELLA, P.J.:                **FILED OCTOBER 1, 2019**

Appellant, Tony Banks, challenges the judgment of sentence entered in the Allegheny County Court of Common Pleas, following his convictions for aggravated assault and related offenses. On appeal, Appellant argues the Commonwealth failed to present any evidence to sustain his conviction for criminal mischief. He also maintains the court erred in denying his motion to suppress witness identification evidence. After careful review, we vacate Appellant's conviction for criminal mischief, and affirm the remainder of his judgment of sentence.

On May 12, 2016, at around 11 p.m., a group of nine men loitered in an abandoned lot in the Homewood neighborhood of Pittsburgh. The men, including Paris Minard and Brandon Murray, were playing cards, drinking, and idly chatting.

Minard watched as a white Mercedes sport utility vehicle drove past the lot three times. He recognized the driver as Appellant, a man Minard knew from around the neighborhood by the nickname "Tone Jigga." Murray had seen Appellant in passing before, but did not know his real name.

Minard was wary of Appellant, and cautioned the other men in the yard that Appellant was dangerous. This animus stemmed from an incident where a former friend of Minard's allegedly shot Appellant after the men got into an altercation several years before. However, Minard had seen Appellant several times on the street since that incident, and Minard did not believe Appellant harbored any ill-will toward him.

After circling the block several times, Appellant exited his vehicle and approached the yard. He shook hands and spoke with the men there, including Minard. Minard observed that Appellant appeared to be intoxicated. Appellant placed his cell phone in his pocket, at which time Minard could see the handle of a semi-automatic gun sticking out of Appellant's waistband. The sight of the gun unnerved Minard, who excused himself from the group to go to the corner store.

On his way back from the store, Minard saw several members of the group had left, including Appellant. Murray was still playing cards as Minard approached the lot. Appellant suddenly walked out from behind another building and pointed the gun at Minard. Appellant said, "This is for getting me shot by your boy," and began firing several shots at Minard. Minard ran, but was struck by a bullet in the ankle and fell. Appellant fled the scene.

The next morning, police received a call from Murray. Murray told officers that he had spotted Appellant in the Homewood neighborhood again, this time driving a red Pontiac convertible. Murray told officers where he was standing, and the direction in which he saw Appellant heading.

Several officers responded to the scene. Police conducted a traffic stop of Appellant's vehicle, and detained him. Murray was picked up by an officer driving a marked patrol car, and driven past Appellant's stopped vehicle and the other cars. Murray identified Appellant as the shooter from the previous night, and Appellant was arrested. Appellant was charged with attempted murder, aggravated assault, possession of a firearm by a person prohibited, carrying a firearm without a license, criminal mischief, and four counts of recklessly endangering another person ("REAP").[1]

At Appellant's preliminary hearing, Minard identified Appellant as his assailant. Appellant sought to suppress Minard and Murray's identifications of Appellant as the shooter, as well as evidence recovered from Appellant's vehicle following the traffic stop. After a hearing, the court denied the suppression motions.

Appellant proceeded to a jury trial on all charges except possession of a firearm by a person prohibited, which was severed from the jury case and presented solely to the bench, and criminal mischief, a summary offense. At the close of the Commonwealth's case, the court entered a judgment of

_____

[1] The Commonwealth also charged Appellant with drug-possession offenses, which were withdrawn before trial.

acquittal on three of the REAP charges, as the Commonwealth conceded it failed to present any evidence regarding these charges. Appellant was convicted of aggravated assault, carrying a firearm without a license, the remaining REAP count, possession of a firearm by a person prohibited, and criminal mischief.[2]

The court ordered a pre-sentence investigation report, and ultimately sentenced Appellant to an aggregate eight years and six months to seventeen years' incarceration, followed by five years of probation. Appellant filed a timely notice of appeal, and this case is now properly before us.[3]

On appeal, Appellant raises two challenges to his judgment of sentence. In the first, he argues the court erred in denying his motion to suppress Paris Minard's identification of Appellant as the shooter.

We review an order denying a motion to suppress by determining whether the findings of fact are supported by the record, and whether the legal conclusions drawn from those facts are without error. *See Commonwealth v. Freeman*, 128 A.3d 1231, 1240 (Pa. Super. 2015). "In

___

[2] 18 Pa.C.S.A. §§ 2702(a)(1); 6106(a)(1); 2705; 6105(a)(1); and 3304(a)(5), respectively.

[3] Appellant filed a single notice of appeal from his two criminal docket numbers. This practice was prohibited by our Supreme Court's ruling in *Commonwealth v. Walker*, 185 A.3d 969 (Pa. 2018). *Walker* held that where a single order resolves issues on more than one lower court docket, an appellant must file separate notices of appeal at each docket number. *See id.*, at 977. Failure to do so requires quashal. *See id*. However, *Walker* was decided on June 1, 2018, and applied prospectively. *See id*. As Appellant filed his single notice of appeal on December 14, 2017, before *Walker* was decided, we need not quash.

making this determination, this Court may only consider the evidence of the Commonwealth's witnesses, and so much of the witnesses for the defendant, as fairly read in the context of the record as a whole, which remains uncontradicted." *Id*. (citation omitted). "Where the record supports the factual findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error." ***Commonwealth v. Fulmore***, 25 A.3d 340, 346 (Pa. Super. 2011) (citation omitted).

The critical factor in determining the propriety of identification evidence is whether, under the totality of the circumstances, the identification was reliable. ***See Commonwealth v. Davis***, 17 A.3d 390, 394 (Pa. Super. 2011). While suggestiveness in the identification process is a factor to be considered when determining the admissibility of identification testimony, suggestiveness alone does not require exclusion. ***See Commonwealth v. Lark***, 91 A.3d 165, 168 (Pa. Super. 2014). "Suggestiveness arises when the police employ an identification procedure that emphasizes or singles-out a suspect." ***Davis***, 17 A.3d at 394 (citation omitted). "A pretrial identification will not be suppressed as violative of due process rights unless the facts demonstrate that the identification procedure was so infected by the suggestiveness as to give rise to a substantial likelihood of irreparable misidentification." ***Commonwealth v. Jaynes***, 135 A.3d 606, 610 (Pa. Super. 2016) (citation omitted).

Here, Appellant indicates Detective Garrett Spory informed Paris Minard that his assailant had been arrested. Spory also told Minard Appellant's legal

name; Minard had only known Appellant by his street name, "Tone-Jigga." Appellant believes that this information caused Minard to wrongly identify Appellant as the perpetrator.

While Minard did not testify at the suppression hearing, Detective Spory did. He stated he visited Minard in the hospital after the shooting, and Minard told him that a man named Tone-Jigga was responsible. *See* N.T. Hearing, 12/14/16, at 56. Though Minard did not know Tone-Jigga's real name, Minard told Spory that he had been acquainted with Tone-Jigga for over twelve years and had spoken with him many times before. *See id*., at 51. After Brandon Murray identified Appellant as the shooter during the police traffic stop, Spory went to Minard's home to inform him of Appellant's arrest. *See id*., at 57. Spory also notified Minard of the date set for Appellant's preliminary hearing at that time. *See id*. Spory stated he did not show Minard a picture of Appellant. *See id*. Spory affirmed that Minard thereafter testified at the preliminary hearing and identified Appellant in court as the man who shot him. *See id*., at 53.

Based on the foregoing, we do not believe Appellant has established that Minard's pretrial identification was the result of suggestiveness that would render the identification unreliable. On the contrary, Spory testified that Minard claimed to have had a relationship with his assailant for over twelve years before the crime. While Spory conceded Minard only knew Appellant by his street name, Tone-Jigga, Appellant can point to nothing in the record that suggests Minard identified him in court based on Spory's information. We do

not believe Appellant has demonstrated Spory's visit to Minard influenced his testimony in any way, given the evidence that clearly establishes Appellant and Minard had an acquaintanceship for many years before the incident. Thus, we find no grounds for reversing the suppression court's order denying Appellant's motion.[4]

In Appellant's remaining issue, he argues the Commonwealth failed to present sufficient evidence to sustain his conviction for criminal mischief. The Commonwealth concedes that Appellant is entitled to relief on this claim, and we agree.

When reviewing a challenge to the sufficiency of the evidence, we consider whether, when viewing the evidence admitted at trial in the light most favorable to the verdict winner, the evidence was sufficient to enable the factfinder to find all elements of the offense established beyond a reasonable doubt. **See Commonwealth v. Herman**, 924 A.2d 1231, 1233 (Pa. Super. 2007). "Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." **Commonwealth v. Sebolka**, 205 A.3d 329, 337 (Pa. Super. 2019) (citation

---

[4] In his Pa.R.A.P. 1925(b) statement, Appellant also challenged the denial of his motion to suppress the evidence recovered from his vehicle and cell phone, and the pretrial identification by Murray. As his brief specifically contests the denial of the suppression motion with regard to Minard's identification, we find he has abandoned the other issues on appeal. **See Commonwealth v. Heggins**, 809 A.2d 908, 912 n. 2 (Pa. Super. 2002) (holding that issues identified on appeal but not developed in appellant's brief are waived).

omitted). "The Commonwealth may sustain its burden by means of wholly circumstantial evidence." *Id*. (citation omitted).

"A person is guilty of criminal mischief if he intentionally damages real or personal property of another[.]" 18 Pa.C.S.A. § 3304(a)(5).

Instantly, Appellant was charged with criminal mischief as a summary offense. Following trial, the court deemed Appellant guilty of the offense, and sentenced him to guilt without further punishment. In the court's Rule 1925(a) opinion, it states that it "may reach its finding of guilt by relying on the combined circumstances of a particular event." Trial Court Opinion, filed 8/21/18, at 12. However, the court declined to specify precisely which circumstances it believes support Appellant's conviction for criminal mischief.

Our own review of the record reveals the criminal complaint charged Appellant with criminal mischief based on allegations that Appellant caused damage to another victim's vehicle as Appellant shot at Minard. *See* Criminal Complaint, filed 5/13/16, at 4. During the preliminary hearing, Detective Spory testified that this other victim claimed Appellant had shot his windshield. *See* N.T. Hearing, 6/28/16, at 20.

However, at no point during *trial* did the Commonwealth present evidence of a crime committed against a victim other than Minard, or evidence of any damage to real or personal property caused by Appellant. *See* N.T. Trial, 2/28/17–3/2/17. In fact, the Commonwealth conceded at the close of trial that it failed to present any such evidence, and the court entered a judgment of acquittal on the REAP counts related to the other, unspecified

- 8 -

victims. *See* N.T. Trial, 3/2/17, at 198. The Commonwealth continues to concede that it failed to present any evidence to sustain Appellant's conviction for criminal mischief. *See* Appellee's Brief, at 9.

As we can find no evidence presented at trial to sustain Appellant's conviction for criminal mischief, we hold the conviction must be vacated. We affirm Appellant's remaining judgment of sentence.[5]

Judgment of sentence affirmed in part and vacated in part. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/1/2019

_____

[5] Because the court imposed a sentence of guilt without further punishment on this conviction, vacating this conviction does not upset the sentencing scheme, and we are not required to remand. *See Commonwealth v. Lomax*, 8 A.3d 1264, 1268-1269 (Pa. Super. 2010) (holding that when our disposition does not upset overall sentencing scheme, there is no need for remand).