J-S06037-26
J-S06038-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALPHONSO  FRANCIS | : | |
| | : | No. 357 WDA 2024 |
| Appellant | : | |
| | : | |

Appeal from the Judgment of Sentence Entered February 14, 2024
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0008876-2023

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALPHONSO FRANCIS | : | |
| | : | |
| Appellant | : | No. 359 WDA 2024 |
| | : | |

Appeal from the Judgment of Sentence Entered February 14, 2024
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0003238-2023

BEFORE:   KUNSELMAN, J., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:            **FILED: APRIL 13, 2026**

Appellant, Alphonso Francis, appeals from the judgments of sentence

entered February 14, 2024, in the Court of Common Pleas of Allegheny County

---

[*] Former Justice specially assigned to the Superior Court.

at dockets CP-02-CR-0003238-2023 and CP-02-CR-0008876-2023. In the case docketed at 03238 of 2023, Appellant was convicted following trial by jury of one count each of Firearms Not to be Carried Without a License[1], Aggravated Assault – Attempt to Cause or Causes Serious Bodily Injury to Enumerated Persons[2], Escape[3], Recklessly Endangering Another Person[4], and Driving Without a License[5]. Prior to trial, one count of Possession of Firearm Prohibited[6] was severed and docketed at 8876 of 2023; Appellant was also convicted of this offense following trial by jury. After careful review, we affirm.

All aforementioned charges arise from a traffic stop conducted by Officer Mark Stephenson of the Whitehall Police, said stop having occurred at approximately 4:00 AM on April 23, 2022, along Route 51 in Whitehall, Pennsylvania. N.T. Jury Trial 12/4/2023 through 12/7/2023 ("N.T. Trial") at 318-321. Appellant was travelling as a passenger in the vehicle, which had been stopped on suspicion of DUI. *Id.*

Sergeant Korey Hinkle, who had been parked nearby in an unmarked police vehicle, approached the scene to assist. *Id.* at 237-240, 262. During his approach Sergeant Hinkle noticed that, despite having been stopped, the vehicle continued to roll forward slowly, and further he observed concerning movement within the vehicle which prompted the sergeant to draw his

---

[1] 18 Pa.C.S.A. § 6106(A)(1)
[2] 18 Pa.C.S.A. § 2702(A)(2)
[3] 18 Pa.C.S.A. § 5121(A)
[4] 18 Pa.C.S.A. § 2705
[5] 75 Pa.C.S.A. § 1501(A)
[6] 18 Pa.C.S.A. § 6105(A)(1)

firearm. *Id.* at 245-246, 250, 262-266. Upon reaching the passenger side of the vehicle, Sergeant Hinkle engaged in a brief argument with Appellant, who was at that time seated in the front passenger seat. *Id.* at 268-269. Appellant refused to keep his hands where the sergeant could see them and initially refused to respond when asked whether there was a firearm in the vehicle. *Id.* at 269, 271-272. Upon being asked a second time, Appellant indicated that no firearm was present. *Id.* at 271-272. Sergent Hinkle then attempted to open the vehicle's door, but the passenger slammed it shut. *Id.* at 258, 273. Upon being ordered again to keep his hands where the sergeant could see them, Appellant stated "bro, I'm out," and slid into the driver's seat. *Id.* at 274, 325, 342. At that time, Sergent Hinkle saw a firearm in the passenger seat. *Id.* at 254, 258.

Officer Stephenson placed the vehicle's initial driver in handcuffs when he heard the Sergeant and Appellant begin to argue. *Id.* at 342-343. When he saw the Appellant move into the driver's seat, Officer Stephenson moved to pull Appellant out of the vehicle. *Id.* at 342-343. Appellant then grabbed Officer Stephenson's arm and pinned it to his chest as he began to drive away from the scene of the stop, dragging the officer several hundred feet before releasing him at speed and causing his body to skid along the street and his head to strike against the pavement. *Id.* at 333-334, 345. As a result, Officer Stephenson suffered open wounds on both knees and one elbow, a contusion on the back of his head, and a concussion. *Id.* at 254, 282, 326-327, 331, 337-338, 345-346.

Using the vehicle's license plate number, law enforcement were able to track "hits" on their license plate reader system to reconstruct the path of the vehicle as it fled from the scene. *Id.* at 77-84. Several days thereafter, a firearm matching the description of that seen in the vehicle by Sergent Hinkle was found along said route. *Id.* at 76, 80-81, 135, 191-192, 256. Subsequent forensic testing found that Appellant's DNA was present on the firearm. *Id.* at 229-234.

Photographs taken from Sergeant Hinkle's body camera were shared with a tri-state law enforcement network, and one Detective Restori was able to identify Appellant and obtain a warrant for his arrest. Further, a member of the community who had worked for a local school district, and who had known Appellant since 2014, also identified Appellant as the individual depicted in Sergeant Hinkle's body camera footage. *Id.* at 140-142, 143. Nevertheless, Appellant was not located and arrested until approximately one year after the stop had occurred. *Id.* at 86-86, 142-143.

A photo lineup was thereafter constructed by Detective Herman of the Allegheny County Police Department through the use of the JNET computer program. N.T. Pre-Trial Motions Hearing 11/15/2023 ("N.T. Motions Hearing") at 49. To do so, Detective Herman provided biographical information describing the suspect to the program, which in turn compiled a selection of photos, subject to manual screening by the detective, from which a final array of eight photos was then assembled. *Id.* at 59-63. Only several of the photos included in the final lineup in this case depicted men with facial markings,

either scars, tattoos, or blemishes, while several had no such visible markings. *Id.* at 66-68.

The photo lineup was presented to Sergeant Hinkle by Detective Cervone of the Allegheny Police Department. *Id.* at 77-78. Detective Cervone did acknowledge a deviation from his department's policy made in the presentation of the photos, in that he initially showed Sergeant Hinkle a single paper on which all eight photos were printed together before showing each photo individually. *Id.* at 82, 87-88. Further, a video recording taken by Detective Cervone's body camera during the lineup presentation shows that prior to presenting Sergeant Hinkle with the photo of Appellant, Detective Cervone tapped the folders containing the photos on the table, also in violation of the department's internal policy. *Id.* at 89-90. Sergeant Hinkle ultimately did identify Appellant's photograph as depicting the suspect and signed his name to it, and this out of court identification was ultimately admitted into evidence. *Id.* at 97-98.

The matter proceeded to trial by jury on December 4, 2023. While Appellant was present on the first and second days of trial, he did not return on the morning of December sixth, and he was absent from trial thereafter. N.T. Trial at 211. Following Appellant's failure to appear, defense counsel represented to the court, outside the presence of the jury, that a tampering report was received by probation relative to an electronic monitor which had been attached to Appellant, and that probation had reached out to Appellant's Mother, who indicated that Appellant had left home at 8:00 AM that morning,

ostensibly to attend court. *Id.* at 210. Defense counsel's subsequent motion for a mistrial based on Appellant's absence was denied, and the trial proceeded *in absentia*. *Id.* at 213-214.

At a later point in the proceedings, the Commonwealth represented to the court, again outside the presence of the jury, that additional information had become available regarding the tamper report, i.e., a probation officer had gone to Appellant's residence and found Appellant was not present and further his ankle monitor had been cut from his leg and left at the residence *Id.* at 293-295. The Commonwealth proposed calling the probation officer to provide testimony to this effect to the jury, however, defense objected on the basis that:

> "What [Appellant] has done is he had failed to appear in court. That is the only thing relevant in this case that the jury must and does know about. The fact that he's absconding from probation and the conditions of probation is a separate bad act. It is not relevant or admissible in this case, it is highly prejudicial, of course."

*Id.* at 307.

The Commonwealth argued in response that testimony from probation regarding the damage to Appellant's ankle monitor was indeed relevant and highlighted the disparity in the information available to the court and the parties as compared to that which was available to the jury, observing "[r]ight now, the jury has no idea why [Appellant is] not here, but we know why he's not here." *Id.* at 307. Nevertheless, the trial court sustained the defense's objection and precluded the Commonwealth from calling the probation officer to testify. *Id.* at 308-309.

During the charge, the trial court instructed the jury on consciousness of guilt as follows:

> There was evidence including the testimony of officers that tended to show that the Defendant fled from the police during the traffic stop and failed to appear at trial. The credibility, weight and effect of this evidence is for you to decide.
>
> Generally speaking, when a crime has been committed and a person thinks he or she is or may be accused of committing it and he or she flees or conceals himself or herself, such flight or concealment is a circumstance tending to prove the person is conscious of guilt. Such flight or concealment does not necessarily show consciousness of guilt in every case. A person may flee or hide for some other motive and may do so even though innocent. Whether the evidence of flight or concealment in this case should be looked at as tending to prove guilt depends upon the facts and circumstances of this case and especially upon motive that may have prompted the flight or concealment.
>
> You may not find the Defendant guilty solely on the basis of evidence of flight or concealment.

*Id.* at 415-416.

Appellant was subsequently convicted on all aforementioned counts, and on February 14, 2024, the Court sentenced Appellant to an aggregate 11-22 years of imprisonment. The instant appeal timely followed.

Appellant presents two issues for this court's review:

I.    DID THE TRIAL COURT ABUSE ITS DISCRETION IN INSTRUCTING THE JURY TO CONSIDER MR. FRANCIS' FAILURE TO APPEAR AT TRIAL AS CONSCIOUSNESS OF GUILT?

Suggested Answer: Yes. (Answered in the negative by the trial court.)

> II. DID THE TRIAL COURT ABUSE ITS DISCRETION IN DENYING SUPPRESSION AS THE PHOTO IDENTIFICAITON OF MR. FRANCIS WAS UNDULY SUGGESTIVE IN VIOLATION OF HIS DUE PROCESS RIGHTS UNDER THE U.S. AND PENNSYLVANIA CONSTITUTIONS?
>
> Suggested Answer: Yes. (Answered in the negative by the trial court.)

Appellant's Brief at 7.

In addressing Appellant's first issue, we must note a striking distinction between the argument raised on appeal and the arguments presented to the trial court. At trial, Appellant articulated his objection to the consciousness of guilt instruction as relates to Appellant's failure to appear twice. First, counsel offered the following objection:

> "So ultimately, I was not expecting to object to the consciousness guilty [sic] instructions regarding the conduct in the case – [. . .] – I think – and I have not looked at it today, but I think the instruction is it is not like specific, it doesn't say the conduct is on X day or Y day, his consciousness of guilt – fleeing or hiding, is consciousness of guilt. I think that if the court gave that instruction it would cover both circumstances – [. . .] and I would just ask that it not be given twice."

N.T. Trial at 215-216.

Next, upon receiving the proposed jury instructions as provided by the trial court counsel contended:

> "So the only disagreement I have here, the Commonwealth did satisfy – the standard instruction suggests putting in a [sic] specific conduct that is at issue. The Commonwealth concluded that the Defendant fled from the police during the traffic stop and failure [sic] to appear at trial.
>
> My request would be that it not include failure to appear at trial."

- 8 -

N.T. Trial at 292-293.

Again, the Commonwealth offered to call Appellant's probation officer to testify to the circumstances of Appellant's apparent flight from trial, to which the defense responded by arguing that such information was, *inter alia*, not relevant and thus not admissible. ***Id.*** at 307. Indeed, trial counsel unequivocally argued that the jury did not need to know anything other than what they already knew, that Appellant failed to appear in court. ***Id.***

In his concise statement of errors complained of on appeal, as relates to the challenged jury instruction Appellant claimed only that:

> "The trial court erred and/or abused its discretion in instructing the jury during its 'flight or concealment as consciousness of guilt jury instruction' that it could consider Mr. Francis' failure to appear at trial as consciousness of guilt, over defense objection.

Appellant's Concise Statement of Errors Complained of on Appeal, at 3. (unpaginated).

Now in his brief, Appellant argues:

> "A trial court judge cannot instruct the jury that the mere failure to appear at court, when there was no evidence of the circumstances of a defendant's absence, shows consciousness of guilt. Here, the jury was not provided any information about why Mr. Francis was not in court, such as whether police tried unsuccessfully to locate him.

> \*\*\*

> Neither ADA Ehrheart nor Attorney Howard elicited testimony about the circumstances surrounding [Appellant's] absence. All the jury knew was that [Appellant] was not sitting beside Attorney Howard for the final two days of trial."

Appellant's Brief at 21, 26 *citing* **Commonwealth v. Babbs,** 499 A.2d 1111, 1113 (Pa. Super. 1985).

This argument is a flagrant contradiction of the argument presented by trial counsel, that testimony from Appellant's probation officer showing that Appellant's ankle monitor had been cut off on the morning of trial, and that the officer was thus unable to locate Appellant following his failure to appear, was irrelevant and unnecessary for the jury to hear. Further, we find no indication in the record that Appellant objected to the consciousness of guilt instruction as relates to Appellant's failure to appear at trial on the basis that "the jury heard no evidence of the circumstances of that absence." Appellant's Brief at 26.

It is well established that "[a] theory of error different from that presented to the trial jurist is waived on appeal, even if both theories support the same basic allegation of error which gives rise to the claim for relief." **Commonwealth v. Ryan,** 909 A.2d 839, 845 (Pa. Super. 2006); s**ee also Commonwealth v. Pi Delta Psi, Inc.,** 211 A.3d 875, 884 (Pa. Super. 2019) ("a new and different theory of relief may not be successfully advanced for the first time on appeal."). As such, we find that Appellant's claim that the Commonwealth failed to introduce evidence of the circumstances of Appellant's failure to appear at trial in support of the consciousness of guilt instruction is waived.

In addressing Appellant's second issue, concerning the denial of his motion to suppress evidence of Sergeant Hinkle's out of court identification of Appellant, we observe the following well-established standard of review:

> Questions concerning the admissibility of evidence are within the sound discretion of the trial court, and its discretion will not be reversed absent a clear abuse of discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill[-]will[,] or partiality, as shown by the evidence of record. Furthermore, if in reaching a conclusion the trial court [overrides] or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

*Commonwealth v. Thompson*, 106 A.3d 742, 754 (Pa. Super. 2014) (internal citations and quotation marks omitted).

As relates to the admissibility of out-of-court identifications, we have held:

> Whether an out of court identification is to be suppressed as unreliable, and therefore violative of due process, is determined from the totality of the circumstances. Suggestiveness in the identification process is a factor to be considered in determining the admissibility of such evidence, but suggestiveness alone does not warrant exclusion. Identification evidence will not be suppressed unless the facts demonstrate that the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. Photographs used in line-ups are not unduly suggestive if the suspect's picture does not stand out more than the others, and the people depicted all exhibit similar facial characteristics.

*Commonwealth v. Bishop*, 266 A.3d 56, 63 (Pa. Super. 2021) *citing*

*Commonwealth v. Mbewe,* 203 A.3d 983, 986-87 (Pa. Super. 2019).

Furthermore, an out-of-court identification resulting from a suggestive identification procedure may yet be admissible if the Commonwealth proves by clear and convincing evidence an independent basis for the identification. ***Commonwealth v. Davis***, 17 A.3d 390, 394 (Pa. Super. 2011). We have held that such a basis is established when a subsequent "in-court identification resulted from the criminal act and not the suggestive [identification procedure]." ***Id.*** In so determining, we are bound to consider the following factors: "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." ***Id.***

After review of the record on appeal, we find no evidence that the trial court abused its discretion in declining to suppress Sergeant Hinkle's out-of-court identification of Appellant.

Although Appellant points to several flaws in the identification procedure at issue in the instant case, we find his contention that "the Commonwealth did not establish that Sergeant Hinkle had an independent basis for his in-court identification of [Appellant]," contrary to the record on appeal. Appellant's Brief at 42. Here, Sergeant Hinkle was face-to-face with Appellant during the criminal incident; the Sergeant testified that at that time he alternated his focus between Appellant's hands and face; the sergeant gave

an apt description of Appellant following the criminal incident; and the sergeant did not equivocate during his testimony regarding his identification of Appellant. While more than one year had passed between the criminal incident and trial, we note that in the instant case Sergeant Hinkle had available to him body camera footage of the incident at issue which shows Appellant's face, and from which several still photographs of Appellant's uncovered face were pulled. Thus, the Commonwealth surely demonstrated that Sergeant Hinkle had a basis for his identification of Appellant independent from the photo line-up at issue, and the trial court therefore did not abuse its discretion and err in denying Appellant's motion to suppress.

As Appellant has failed to demonstrate he is entitled to relief on any issue presented, for the foregoing reasons, we affirm.

Judgments of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 4/13/2026