J-S04031-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
:  PENNSYLVANIA
:
v.  :
:
:
:
JERMAINE SMITH  :
:
Appellant  :  No. 2107 EDA 2022

Appeal from the PCRA Order Entered August 8, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0009568-2010

BEFORE:  BOWES, J., STABILE, J., and LANE, J.

MEMORANDUM BY LANE, J.:        **FILED APRIL 10, 2024**

Jermaine Smith ("Smith") appeals from the order denying his timely, first Post Conviction Relief Act[1] ("PCRA") petition. We affirm.

The Commonwealth charged Smith with fatally shooting Isaac Nesmith ("the victim") at close range, while the victim sat in the driver's seat of a van. The victim was able to drive a short distance away, but he was declared dead at the scene. At trial, Smith was represented by J. Michael Farrell, Esquire ("Trial Counsel").

At trial, the Commonwealth called Richard Broady, who testified that shortly before the shooting, he was in the van with the victim, Thomas Spence, and Trabit Green. Broady went to a store across the street, and while he was

---

[1] *See* 42 Pa.C.S.A. §§ 9541-9546.

exiting the store, he heard gunshots, looked across the street to the van, and saw someone wearing a hoodie run into the alley. Broady testified he did not see the person's face and could not identify him. The Commonwealth, however, confronted Broady with: (1) his two prior statements to homicide detectives, in which he stated he saw Smith, known as "Maniac," standing next to the van and shooting into the van; as well as (2) Broady's testimony at the preliminary hearing — that at the time of the gunshots, he saw Smith, whom he had known a "couple years," standing next to the van and then running through the alley. N.T. Trial Vol. II, 9/11/12, at 186, 216, 234.

The Commonwealth also called Spence, who testified he was in the rear seat of the van, the victim was in the driver's seat, and no one else was in the van. Spence further testified that when he heard gunshots, he "got down" and did not see the shooter, and that when the victim "pulled off" the van, the victim stated only, "Can't see." N.T. Trial Vol. III, 9/12/12, at 43-45. Spence denied he knew Smith. The Commonwealth then confronted Spence with the statements he previously gave to detectives: that Trabit Green was also in the van, and after the gunshots, the victim said, "Maniac shot me." *Id*. at 66-67.

Smith did not testify at trial, and presented a few exhibits as evidence. He argued: there was no physical evidence linking him to the shooting; instead the homicide detectives' investigation was based solely on information given by an anonymous confidential informant (the "CI"); and the detectives threatened Broady and Spence into naming him as the shooter.

- 2 -

The jury found Smith guilty of murder in the first degree and possessing instruments of crime[2] ("PIC"). Immediately thereafter, the trial court imposed a sentence of life imprisonment without parole for murder, with no further penalty for PIC.

Still represented by Trial Counsel, Smith filed a direct appeal. This Court affirmed his judgment of sentence, and the Pennsylvania Supreme Court denied his petition for allowance of appeal. *See Commonwealth v. Smith*, 106 A.3d 155 (Pa. Super. 2014) (unpublished memorandum), *appeal denied*, 110 A.3d 997 (Pa. 2015).

Smith then filed a *pro se* timely, first PCRA petition. Teri Himebaugh, Esquire ("PCRA Counsel"), entered her appearance to represent him, and she filed an amended PCRA petition, raising several allegations of Trial Counsel's ineffective assistance.[3] PCRA Counsel also attached an affidavit, purportedly from Green, the third passenger in the van, which stated Trial Counsel did not contact him, but furthermore that he saw the shooter for a "split second" and

---

[2] *See* 18 Pa.C.S.A. §§ 2501(a)(1), 907(a), respectively.

[3] The amended PCRA petition also raised a claim that Smith was denied his right to effective assistance of counsel, where Trial Counsel was under federal investigation for participating in organized drug trafficking activity. At the PCRA hearing, Trial Counsel testified he was convicted in federal court of money laundering, tampering with a witness, and tampering with an official proceeding, and he lost his law license in April 2017. On appeal, Smith has abandoned this issue.

did not know who the shooter was. *See* Smith's Amended Motion for Post Conviction Relief, 3/4/18, Exhibit P2.

The PCRA Court convened a limited evidentiary hearing on, *inter alia*, Smith's claim that Trial Counsel was ineffective for not interviewing or calling Green to testify. Although Green was subpoenaed to testify, he did not appear that day, and thus Smith could not present him as a witness. Nevertheless, the PCRA court stated it would consider this claim on the basis of the filed amended petition. The PCRA court then heard testimony from Smith and Trial Counsel on the issue of Trial Counsel's preparation for trial, as well as what Trial Counsel told Smith concerning his right to testify.[4]

On August 8, 2022, the PCRA court issued the underlying order, denying relief on Smith's amended PCRA petition.[5] Smith filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal, and the PCRA court filed an opinion.

---

[4] The PCRA court initially stated it would **not** hear testimony concerning Smith's claim that Trial Counsel was ineffective for advising him not to testify at trial, but it would also consider this issue on the basis of the filed amended petition. Both Trial Counsel and Smith, however, did give testimony about their conversation on this issue, which the PCRA court ultimately permitted.

[5] We note the relatively long passage of time, between: Smith's May 2016 *pro se* PCRA petition; PCRA Counsel's August 2017 entry of appearance; the March 2018 filing of the counseled amended PCRA petition; the Commonwealth's April 2019 motion to dismiss the amended petition; and the August 2022 evidentiary hearing. In total, more than six years lapsed between the filing of the *pro se* petition and the PCRA court's order dismissing it.

While the appeal was pending, PCRA Counsel filed a petition to withdraw from representation, explaining Smith no longer wished for her to represent him. This Court granted the petition, and present counsel, Lonny Fish, Esquire, entered his appearance. Attorney Fish then filed a petition for remand, so that he could file an amended Rule 1925(b) statement that raised new issues of PCRA Counsel's alleged ineffectiveness. *See Commonwealth v. Bradley*, 261 A.3d 381, 401 (Pa. 2021) (holding "that a PCRA petitioner may, after a PCRA court denies relief, and after obtaining new counsel or acting *pro se*, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal"). This Court granted the relief sought.

On remand, Smith filed an amended Rule 1925(b) statement, raising issues related to both his prior claims of Trial Counsel's ineffective assistance, as well as new claims of PCRA Counsel's ineffectiveness for not raising additional claims of Trial Counsel's ineffectiveness. The PCRA court issued a Rule 1925(a) supplemental opinion, addressing all of these claims.

Smith presents the following issues for our review:

1. The PCRA Court erred in finding that . . . Smith's rights pursuant to the 6th and 14th Amendments [to] the U.S. Constitution and Article 1, § 9 of the Pennsylvania Constitution were not violated by Trial Counsel's ineffective advice that Smith not testify on his own behalf, thereby making Smith's waiver unknowing and unintelligent.

2. The PCRA Court erred in finding that Smith's rights pursuant to the 5th, 6th[,] and 14th Amendments [to] the U.S. Constitution and Article 1, § 9 of the Pennsylvania Constitution were not violated based on after-discovered evidence of an unconstitutional pattern, practice and custom by Philadelphia homicide detectives.

- 5 -

3. The PCRA Court erred in finding that Smith's constitutional rights under the 6th and 14th amendments [to] the U.S. Constitution and Article 1, § 9 of the Pennsylvania Constitution were not violated by [Trial Counsel's] failure to preserve at trial and argue on direct appeal that trial court erred by not finding that the Commonwealth improperly withheld the existence and identity of a [CI] and violated Smith's rights under the Confrontation Clause when it denied the defense request for a hearing where the CI could be questioned as to the source of his information about the case.

4. The PCRA Court erred in finding that Smith's constitutional rights under the 6th and 14th Amendments [to] the U.S. Constitution and Article 1, § 9 of the Pennsylvania Constitution were not violated by [T]rial [C]ounsel's failure to object to the prosecutor's improper opening and closing arguments.

5. Pursuant to **Bradley**, 261 A.3d 381 . . . , PCRA [C]ounsel was ineffective by failing to argue in [the amended PCRA] petition that Smith's rights pursuant to the 6th and 14th Amendments [to] the U.S. Constitution and Article 1, § 9 of the Pennsylvania Constitution were violated by [T]rial [C]ounsel's ineffectiveness for stipulating to the authenticity of an edited compilation video of security footage and their failure to object and/or to make a motion to exclude said video recordings and any compilation of footage used by the Commonwealth at trial to convict . . . Smith.

6. Pursuant to . . . **Bradley**, 261 A.3d 381 . . . , PCRA [C]ounsel was ineffective by failing to argue in [the amended PCRA] petition that Smith's rights pursuant to the 6th and 14th Amendments [to] the U.S. Constitution and Article 1, § 9 of the Pennsylvania Constitution were violated by [T]rial [C]ounsel's ineffectiveness for having . . . Smith stand up in court for identification purposes. The trial took place an estimated two years after the alleged incident and . . . Smith's weight and body size had changed. . . . Smith was 225 lbs on or around the date of offense and at trial he weighed 290 lbs. Additionally the man on the footage was wearing a black jacket/hoodie and that could have made them look as big as . . . Smith during the in-court identification.

7. Pursuant to . . . **Bradley**[,] 261 A.3d 381 . . . , PCRA [C]ounsel was ineffective by failing to argue in [the amended PCRA] petition that Smith's rights pursuant to the 6th and 14th Amendments [to]

- 6 -

the U.S. Constitution and Article 1, § 9 of the Pennsylvania Constitution were violated by [T]rial [C]ounsel's ineffectiveness for failing to effectively cross-examine Commonwealth's witness . . . Bro[a]dy regarding inconsistencies between their statements and the surveillance video referenced previously.

8. Pursuant to . . . *Bradley*[,] 261 A.3d 381 . . . , PCRA [C]ounsel was ineffective by failing to argue in [the amended PCRA] petition that Smith's rights pursuant to the 6th and 14th Amendments [to] the U.S. Constitution and Article 1, § 9 of the Pennsylvania Constitution were violated by [Trial Counsel's] ineffectiveness for failing to raise issues preserved during jury selection.

9. Pursuant to . . . *Bradley*[,] 261 A.3d 381 . . . , PCRA [C]ounsel was ineffective by failing to argue in [the amended PCRA] petition that Smith's rights pursuant to the 6th and 14th Amendments [to] the U.S. Constitution and Article 1, § 9 of the Pennsylvania Constitution were violated by Trial Counsel's failure to call fact witness . . . Green who was at the scene of the shooting but was not called to testify.

10. The PCRA Court erred in finding that the cumulative impact of multiple instances of ineffective assistance of counsel did not deprive Smith of his due process rights under the 14th Amendment [to] the U.S. Constitution and the broader protections of the Pennsylvania Constitution.

Smith's Brief at 5-8 (unnecessary capitalization omitted).

Preliminarily, we address the large number of claims raised on appeal by Smith's present counsel, Attorney Fish, and note with displeasure that counsel largely fails to address the PCRA court's well-reasoned analyses. We remind counsel of "the importance of expert, focused appellate advocacy. While criminal defendants often believe that the best way to pursue their appeals is by raising the greatest number of issues, actually, the opposite is true: selecting the few most important issues succinctly stated presents the greatest likelihood of success." *See Commonwealth v. Ellis*, 626 A.2d 1137,

1140-41 (Pa. 1993) (citation omitted); *see also Commonwealth v. Walker*, 954 A.2d 1249, 1255 (Pa. Super. 2008) (*en banc*) (stating that "[t]his Court is an error correcting court; it is not an error-finding court").

We set forth the relevant standard of review:

> When reviewing the denial of a PCRA petition, we must determine whether the PCRA court's order is supported by the record and free of legal error. Generally, we are bound by a PCRA court's credibility determinations. However, with regard to a court's legal conclusions, we apply a *de novo* standard.

*Commonwealth v. Smith*, 181 A.3d 1168, 1174 (Pa. Super. 2018) (citation omitted).

With respect to a claim of ineffective assistance of counsel, this Court has stated:

> It is well-established that counsel is presumed effective[.] To prevail on an ineffectiveness claim, the petitioner has the burden to prove that (1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance. The failure to satisfy any one of the prongs will cause the entire claim to fail.

*Id*. at 1174-75. Furthermore, "counsel cannot be deemed ineffective for failing to raise a meritless claim." *Id*. at 1175.

In his first issue, Smith avers the PCRA court erred in finding Trial Counsel was not ineffective for advising him not to testify at trial. This Court has explained:

> [t]he decision of whether or not to testify on one's own behalf is ultimately to be made by the defendant after full consultation with counsel. In order to sustain a claim

- 8 -

> that counsel was ineffective for failing to advise the appellant of his rights in this regard, the appellant must demonstrate either that counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf.
>
> Additionally, "where a defendant voluntarily waives his right to testify after a colloquy, he generally cannot argue that trial counsel was ineffective in failing to call him to the stand."

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1075 (Pa. Super. 2019) (citations omitted).

Smith asserts that Trial Counsel met with him only once before trial, and that when Smith stated he had an alibi and asked "whether he should take the stand," "the sum and substance" of counsel's advice was, "No. I got this." Smith's Brief at 16, 20. Smith claims, without citation to authority, that "[a]ny reasonably experienced criminal defense counsel would agree that most juries want to hear from the defendant himself." *Id*. at 20. Smith contends that if he had testified: (1) not only would the jury have learned he was at a friend's house at the time of the crime and thus could not have been the shooter; but also (2) he would have been entitled to an alibi jury charge. Smith concludes Trial Counsel had no reasonable basis for advising him not to testify, and he was prejudiced, as he would have taken the stand at trial. We conclude no relief is due.

Here, the PCRA court denied relief on two bases: (1) Smith was bound by the statements he made in his waiver colloquy at trial — that he was satisfied with Trial Counsel, and after consultation with counsel, he decided

- 9 -

not to testify; and (2) in any event, at the PCRA hearing, both Smith and Trial Counsel testified they did "go over the pros and cons of" testifying. *See* PCRA Court Opinion, 3/20/23, at 7-8.

Our review reveals the PCRA court's analysis is supported by the record. First, at trial, the trial court conducted an oral colloquy on the record into Smith's decision not to testify. Smith responded in the affirmative to the following questions: whether he "had sufficient time to discuss" with Trial Counsel the issue of whether he should testify; whether he had "weighed the benefits [of] testifying in [his] own defense against the deficits or the bad things that might result;" and whether he had "decided that it is in [his] best interest not to testify [on his] own behalf." N.T., Trial Vol. IV, 9/13/12, at 292. The trial court also informed Smith he had "an absolute right" under both the Pennsylvania and United States Constitutions to not testify, but advised, "I can't read people's minds, and I can't guarantee you that there isn't somebody on the jury who might be thinking, well, if he's really innocent, why doesn't he tell his side of the story?" *Id*. at 293-94. The trial court asked Smith whether he had considered this "possibility" when "weighing the benefits and deficits of testifying in his [own] defense." *Id*. at 294. Smith replied, "Yes. . . . I'm not a good talker," and affirmed that he believed it was "best to rely on" Trial Counsel and "his attack on the [Commonwealth's] evidence." *Id*.

Additionally, at the PCRA hearing, Trial Counsel testified that prior to trial, he met with Smith multiple times and advised it was his decision whether to testify. N.T. Evidentiary Hearing, 8/1/22, at 12, 17. Trial Counsel denied that Smith told him he was with a friend at the time of the crime or named any potential witnesses to interview. *Id*. at 13, 16. Smith testified that Trial Counsel only met with him once and that he told counsel of his alibi; however, he acknowledged counsel did "go over . . . the pros and cons of . . . taking the stand." *Id*. at 31, 34. The PCRA court credited Trial Counsel's testimony, and we are bound by this finding. *See Smith*, 181 A.3d at 1174; *see also* PCRA Court Opinion, 3/20/23, at 9.

In sum, Smith merely reiterates the claims already rejected by the PCRA court, while wholly ignoring the court's findings regarding his waiver colloquy at trial and the testimony at the PCRA hearing. Smith is bound by his statements at trial, and he cannot now claim Trial Counsel did not advise him as to his right to testify. *See Sandusky*, 203 A.3d at 1075. We thus determine Smith's first ineffectiveness claim is meritless. *See Smith*, 181 A.3d at 1174-75. Accordingly, his first issue merits no relief.

In his second issue, Smith avers the PCRA court erred in denying relief on his claim of after discovered evidence — that detectives in the Philadelphia Police homicide unit have engaged in an unconstitutional pattern of threatening and abusing suspects and witnesses into giving inculpatory statements. Subsection 9543(a)(2)(vi) of the PCRA provides relief to a

petitioner who pleads and proves, by a preponderance of the evidence, that his conviction or sentenced resulted from "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S.A. § 9543(a)(2)(vi). To establish relief, a petitioner must demonstrate the new evidence:

> (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

**Commonwealth v. Small**, 189 A.3d 961, 972 (Pa. 2018).

In support of his claim that Philadelphia homicide detectives have engaged in a pattern of unconstitutional and coercive conduct, Smith cites several trial court decisions, in which Philadelphia detectives, including Detectives Pitts, Dove, and Jenkins,[6] were found to have engaged in such behavior. Smith then avers "there are additional Philadelphia homicide detectives who have the exact same unconstitutional pattern and practice," and "the instant case is yet another example of this unconstitutional pattern, practice and custom." Smith's Brief at 26, 29.

The PCRA court considered Smith's second issue and determined that it lacked merit. The PCRA court found Smith relied on "***unrelated*** cases, ***not***

---

[6] Smith does not provide the first names of these detectives.

involving the detectives in this case." PCRA Court Opinion, 3/20/23, at 10 (emphases added). The PCRA court reasoned Smith "failed to show any nexus between the alleged coercive cases and this case," and found no basis to "make the broad assumption that there must have been coerced confessions in this case." *Id.* at 11.

Based on our review, we reject Smith's premise that this evidence — that Philadelphia homicide detectives engaged in threatening behavior — was not previously known to him. The record reflects that Smith, in fact, argued at trial that homicide detectives pressured witnesses into naming him as the shooter, by threatening to charge the witnesses with the shooting if they did not comply. N.T. Trial Vol. V, 9/14/22, at 24 (Trial Counsel arguing that "Homicide detectives pressure[d] vulnerable and weak individuals . . . to confirm what [a CI had reported] by threatening to charge them with the crime itself"). Accordingly, Smith's claim — that evidence of the detectives' alleged conduct was discovered only after trial — is belied by the record. *See* 42 Pa.C.S.A. § 9543(a)(2)(vi); *see also Small*, 189 A.3d at 972.

Moreover, Smith does not aver that any of the detectives investigating this case were found to have committed misconduct, nor that the detectives were even related to the other defendants' cases that he cites. Smith does not dispute the PCRA court's reasoning, but rather reraises his underlying factual claims for this Court to review *de novo*. This we cannot do. *See*

*Smith*, 181 A.3d at 1174. Accordingly, as the PCRA court's ruling is supported by the record and is free of error, Smith's second issue warrants no relief.

In his third issue, Smith avers Trial Counsel was ineffective for not pursuing a claim that the Commonwealth improperly withheld the existence and identity of a CI, which violated his rights under the Confrontation Clause and *Brady v. Maryland*, 373 U.S. 83 (1963). "The Confrontation Clause in the Sixth Amendment to the United States Constitution provides that all criminal defendants enjoy 'the right to confront and cross-examine adverse witnesses.'" *Commonwealth v. Rosser*, 135 A.3d 1077, 1087 (Pa. Super. 2016) (citation omitted). However, the right of cross-examination is not absolute. *Id*. Generally, "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id*.

Furthermore, this Court has explained: "To succeed on a *Brady* claim, a defendant must show that: '(1) the evidence at issue was favorable to the accused, either because it is exculpatory or because it impeaches; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued.'" *Sandusky*, 203 A.3d at 1061 (citation omitted). However, "*Brady* does not require the disclosure of information 'that is not exculpatory but might merely form the groundwork for possible arguments or defenses . . ..'" *Id*. at 1062 (citation omitted).

The record reflects that the existence of the CI was disclosed at the pretrial motion *in limine* hearing, held on the eve of trial. Detective Kevin Judge had received information, from an FBI detective, that a CI provided Smith's name as the shooter and Broady's and Spence's names as occupants of the van. *See* N.T. Trial Vol. I, 9/10/22, at 215-17, 219. Detective Judge testified the CI did not have personal knowledge of the shooting, but was told this information by someone else. *Id*. at 216. Smith then requested "discovery of the source of the [CI's] knowledge." *Id*. at 266. The trial court partially agreed with Smith, reasoning that if the CI received the information from an eyewitness to the shooting, the Commonwealth would have to disclose the CI's identity to the defense. The trial court thus directed the Commonwealth to determine whether the CI received information from an eyewitness. The following day, the Commonwealth advised that it had spoken with the FBI detective, who confirmed the CI was not aware of any eyewitnesses, but rather had only "third party . . . through the neighborhood-type information" as to who the shooter and occupants of the van were. N.T. Trial Vol. II, 9/11/12, at 21. The trial court thus denied Smith's request to further investigate this CI. Trial Counsel did not make any further objection.

Smith asserts that against this record, Trial Counsel was ineffective for not further requesting that the Commonwealth disclose the CI's identity, and not arguing that the withholding of this information was a ***Brady*** violation. Smith contends that but for the CI's information, the detectives did not have

- 15 -

any evidence linking him to the crime, yet the CI's naming him as the shooter "was based entirely on what [an] unnamed eyewitness told" him. Smith's Brief at 32, 35. Meanwhile, Smith avers, detectives "ignored the physical evidence which did not match up with the [CI's] version of events." *Id*. at 32. Smith also maintains the CI's identity "would have been material to investigate" whether the CI himself was the shooter or an accomplice, and if so, what motive the CI had for falsely naming him as the shooter. *Id*. at 34.

In addressing this issue, the PCRA court reiterated that the CI did not possess personal knowledge of the shooting, it was not clear where he learned the information, and thus he would have been unable to present any material evidence. The PCRA court also found Smith raised "unspecified allegations, lacking in any particularity as to how the alleged information would have aided his defense." PCRA Court Opinion, 3/20/23, at 12-13 (*citing* Pa.R.Crim.P. 902(A)(12) (requiring that a PCRA petition cite the facts supporting each ground for relief)).

Based on our review, we discern no error by the PCRA court. Smith again does not refute the PCRA court's discussion, but instead baldly claims, without citation to any evidence and contrary to the statements at the pretrial hearing, that the CI "could have been compelled to disclose who the actual eyewitness was," or that an investigation could have been made into whether "the CI himself [were] the actual shooter or assisting the actual shooter to set [him] up." *See* Smith's Brief at 34. Smith ignores that the trial court

specifically directed the Commonwealth to determine whether the CI received his information from an eyewitness, and the trial court was satisfied with the Commonwealth's response that the CI did not know of any eyewitnesses, but rather had heard the information "through the neighborhood[.]"   N.T. Trial Vol. III, 9/11/12, at 21.   We therefore conclude that the record supports the PCRA court's determination that Smith's second ineffectiveness claim is meritless.   Accordingly, this issue warrants no relief.

In his fourth issue, Smith asserts the PCRA court erred in denying relief on his claim that Trial Counsel was ineffective for not objecting to certain statements in the Commonwealth's closing argument.[7]   We note:

> It is well-established that a prosecutor is free to present his argument with logical force and vigor so long as there is a reasonable basis in the record for the prosecutor's remarks. Further, reversible error arises from a prosecutor's comments only where their unavoidable effect is to prejudice the jurors, forming in their minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a fair verdict.
>
> To succeed on a claim of ineffective assistance of counsel based on trial counsel's failure to object to prosecutorial misconduct, the defendant must demonstrate that the prosecutor's actions violated a constitutionally or statutorily protected right, such as the Fifth Amendment privilege against compulsory self-incrimination or the Sixth Amendment right to a fair trial, or a constitutional interest such as due process.  . . .

_____

[7] Although Smith's statement of the questions presented, as well as the relevant heading in his argument section, also refer to the Commonwealth's **opening** argument, he does not present discussion of any opening statement. Accordingly, we deem any challenge regarding the Commonwealth's opening statement to be waived.  **See** Pa.R.A.P. 2119(a) (requiring argument section of brief to include discussion of particular claim raised).

*Commonwealth v. Walker*, 110 A.3d 1000, 1006 (Pa. Super. 2015) (citation omitted).

Smith avers Trial Counsel was ineffective for not objecting to certain comments in the Commonwealth's closing that were not supported by the evidence and thus prejudicial. Smith acknowledges the trial court sustained Trial Counsel's objections to the Commonwealth's rhetorical question — posed in response to the defense's theory — of why the neighborhood would be in fear of a "destitute guy" and "drug addict that nobody cares about" (Smith). N.T. Trial Vol. V, 9/14/12, at 96-97. The trial court instructed the jury that such allegations were not a part of the evidence. Smith avers Trial Counsel should have then also objected to the Commonwealth's ensuing remark, of why Broady and Spence would be afraid of Smith. *Id*. at 98. Smith maintains the Commonwealth's latter comment "again improperly referenced the neighbors being in fear when there was no such evidence of record." *Id*. at 37. He contends the "unavoidable effect" of the comment was to prejudice the jurors to such a degree that they formed a fixed bias toward him, and Trial Counsel lacked any reasonable basis for not renewing the objection. *See id*.

The PCRA court addressed Smith's fourth issue and determined that it lacked merit. The PCRA court reasoned that after the trial court sustained the Trial Counsel's objection to the Commonwealth's statement, that the neighborhood in general feared Smith, the Commonwealth moved on to a different argument, that **Broady and Spence** were afraid to testify, and it

was no longer addressing the issue of "fear throughout the neighborhood." *See* PCRA Court Opinion, 3/20/23, at 15. The PCRA court then reasoned the Commonwealth's comment was a fair inference based on the evidence, and thus Trial Counsel "cannot be faulted for not objecting." *Id*.

Based on our review, we discern no error by the PCRA court. Again, Smith completely ignores this discussion on appeal, and instead reiterates a claim that the Commonwealth's statement, that Broady and Spence were afraid, should be construed as a continuation of its argument that the neighborhood was afraid of him. We agree with the PCRA court that Smith cannot show his underlying issue had merit, and furthermore that Trial Counsel cannot be deemed ineffective for not raising a meritless claim. *See Smith*, 181 A.3d at 1174-75. We therefore conclude that the record supports the PCRA court's determination that Smith's fourth claim is meritless.

In his fifth issue, Smith claims PCRA Counsel was ineffective for not raising a claim that Trial Counsel was ineffective for stipulating to the authenticity of "an edited compilation video." Smith's Brief at 39. Smith raised the present claim for the first time in his amended Rule 1925(b) statement.

As stated above, *Bradley* held "that a PCRA petitioner may, after a PCRA court denies relief, and after obtaining new counsel or acting *pro se*, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so,

even if on appeal." ***Bradley***, 261 A.3d at 401. Our Supreme Court has explained:

> In some instances, the record before the appellate court will be sufficient to allow for disposition of any newly-raised ineffectiveness claims. However, in other cases, the appellate court may need to remand to the PCRA court for further development of the record and for the PCRA court to consider such claims as an initial matter. [T]o advance a request for remand, a petition would be required to provide more than mere 'boilerplate assertions of PCRA counsel's ineffectiveness[;'] however, where there are 'material facts at issue concerning [claims challenging counsel's stewardship] and relief is not plainly unavailable as a matter of law, the remand should be afforded[.]'

***Commonwealth v. Parrish***, 273 A.3d 989, 1002 (Pa. 2022) (citations omitted). "Where a petitioner alleges multiple layers of [counsel's] ineffectiveness, he is required to plead and prove, by a preponderance of the evidence, each of the three prongs of ineffectiveness relevant to each layer of representation." ***Id***. at 1003 n.11

In claiming PCRA Counsel was ineffective for not raising a claim that Trial Counsel was ineffective for stipulating to the authenticity of a compilation video, the sum of Smith's arguments are: (1) neither Trial Counsel, PCRA Counsel, nor the trial court asked him whether he agreed to stipulate to the "admissibility [***sic***]" of the video; (2) by stipulating to the authenticity of the video, Trial Counsel implicitly agreed the footage was credible; (3) Smith was prejudiced by the stipulation because he could not object to the admission of the evidence; and (4) the evidence was "damning and dispositive to the issue of his guilt." Smith's Brief at 39-40.

The PCRA court addressed Smith's fifth issue in its supplemental opinion, emphasizing that Smith made no claim that the video was inaccurate, nor that "exculpatory portions were left out." PCRA Court Opinion, 3/20/23, at 16. The PCRA court also pointed out that Smith did not suggest what kind of objection Trial Counsel should have made to the video. The court thus concluded neither PCRA Counsel nor Trial Counsel were ineffective for not raising this meritless issue.

Based on our review, we discern no error by the PCRA Court. Smith again fails to address the PCRA court's discussion. Instead, he simply presents the same vague and undeveloped discussion that Trial Counsel was ineffective, without specifying any inaccuracies in the video. Accordingly, Smith has not pleaded a sufficient layered claim of ineffectiveness. **See Parrish**, 273 A.3d at 1002. Furthermore, his boilerplate allegation does not warrant a remand for an evidentiary hearing on this new claim of PCRA Counsel's ineffectiveness. **See id**. For the foregoing reasons, we do not disturb the PCRA court's conclusion that no relief is due on Smith's fifth claim.

In his sixth issue, Smith avers PCRA Counsel was ineffective for not raising a claim that Trial Counsel was ineffective for not objecting to Smith standing up at trial for identification purposes. With respect to a challenge to a witness' identification of a defendant, "the Commonwealth must prove, through clear and convincing evidence, the existence of an independent basis for the identification. . . . An independent basis is established when 'the in-

court identification resulted from the criminal act and not the suggestive [identification procedure].'" *Commonwealth v. Davis*, 17 A.3d 390, 394 (Pa. Super. 2011). In determining whether the identification had an independent basis, a trial court must consider the witness' opportunity "to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Id*.

The PCRA court's opinion first pointed out that Smith's amended Rule 1925(b) statement failed to identify the place in the trial transcript where he was ordered to stand for identification purposes. The PCRA court cited two instances where Smith's physical appearance or identity as the shooter were raised, but the transcript did not indicate Smith was ordered to stand during either instance. Nevertheless, the court addressed these two instances, and reasoned that one witness, Broady, knew Smith prior to the shooting, and thus there was independent corroboration for the in-court identification.[8]

---

[8] The second possible instance cited by the trial court appeared in Officer Rahsaan Price's testimony. Officer Price testified that four months before the shooting, he chased an individual named Maleek Custis, who had fired a gun at a group of people. Officer Price described Custis as approximately five feet and ten inches tall, and weighing approximately 190 pounds. The Commonwealth asked how Custis's size compared to Smith's size. Trial Counsel objected, but the trial court overruled the objection. Officer Price responded Custis was "much smaller" than Smith. N.T., 9/12/12, at 17.

Despite this discussion by the PCRA court, on appeal Smith again fails to cite the place in the record where he was allegedly ordered to stand for identification purposes. While Smith states that "[t]he PCRA court was simply guessing as to where or whether the in-court identification took place at all," he does not confirm whether the two in-court identifications, discussed by the PCRA court, were indeed the identifications that he now wishes to challenge. Smith's Brief at 42. In any event, the sum of Smith's discussion is that the PCRA court "misse[d] the point of [his] argument," because in the aggregate, the two identifications prejudiced him and were the "functional equivalent" of convicting him. **Id**.

First, we emphasize Smith has again failed, despite the PCRA court's clear discussion, to cite the place in the record he was ordered to stand at trial for purposes of identification. Additionally, he does not dispute the PCRA court's reasoning that because Broady knew him prior to the shooting, there was an independent basis for the in-court identification of him. **See Davis**, 17 A.3d at 394. We also note Smith does not cite, and we have not discovered, any legal authority imposing limits on an in-court identification of a defendant, particularly where identity was the issue at trial. Furthermore, we remind Smith that "[i]t is axiomatic in a criminal trial that all evidence offered by the prosecution will be prejudicial to the defendant." **Commonwealth v. Hicks**, 151 A.3d 216, 224 (Pa. Super. 2016) (citation omitted). We conclude Smith has failed to plead a sufficient layered claim of

PCRA Counsel's ineffectiveness, and furthermore failed to show that a remand is necessary for further review of his undeveloped claim. **See Parrish**, 273 A.3d at 1002. Based on our review, we do not disturb the PCRA court's determination that Smith's sixth claim is meritless.

In his seventh issue, Smith claims PCRA Counsel was ineffective for not raising a claim that Trial Counsel was ineffective for not cross-examining Broady about inconsistencies between his prior statement to the police and a surveillance video played at trial. "The scope and vigor of cross-examination is a matter which falls within the ambit of sound trial strategy to be exercised by trial counsel alone." **Commonwealth v. Molina**, 516 A.2d 752, 757 (Pa. Super. 1986).

Smith avers PCRA Counsel was ineffective for not raising a claim that Trial Counsel was ineffective for not fully cross-examining Broady. Specifically, Smith avers that previously, Broady told detectives he was outside the store, on the sidewalk, when heard gunshots. However, the surveillance video played at trial showed Broady was in the doorway of the store. Smith acknowledges that Trial Counsel cross-examined Broady on this inconsistency, but insists "[t]here should have been more areas of exploration." Smith's Brief at 44. In support, Smith contends that "[i]f there were true discrepancies[] between Broady's statement and the video . . . , [Trial C]ounsel was deficient and ineffective[.]" **Id**. Smith also claims there was *per se* ineffectiveness, where the Commonwealth had questioned Broady

for hours, but Trial Counsel's cross-examination comprised fewer than twenty pages of the trial transcript.

In denying relief on his issue, the PCRA court pointed out that Smith did not identify any additional inconsistencies between Broady's statement and the surveillance video. The PCRA court concluded it thus could not provide any meaningful review on this claim.

Despite this discussion by the PCRA court, Smith again fails to explain what alleged inconsistencies Trial Counsel should have explored on cross-examination. He acknowledges Trial Counsel did question Broady on the one inconsistency cited — whether he was in the doorway or on the sidewalk when he heard gunshots. Furthermore, Smith does not cite, and we have not discovered, any legal authority supporting his claim that an attorney may be found *per se* ineffective when his cross-examination is far shorter than the Commonwealth's direct examination of the same witness. Based on our review, we discern no error in the PCRA court's analysis. As Smith has not sufficiently articulated why Trial Counsel was allegedly deficient, PCRA Counsel cannot be considered to have been ineffective for not raising the underlying claim, and no remand is necessary for development of a record on this bald claim. **See Parrish**, 273 A.3d at 1003 n.11. We thus agree with the PCRA court's denial of relief on Smith's seventh issue.

In his eighth issue, Smith claims that although Trial Counsel raised two different **Batson**[9] challenges during jury selection, PCRA Counsel was ineffective for not raising a claim that Trial Counsel failed to argue more "forcefully . . . that the conduct of the Commonwealth was discriminatory." Smith's Brief at 46. "**Batson** established that it is unconstitutional to use peremptory strikes in a purposefully discriminatory manner." **Commonwealth v. Alexander**, 296 A.3d 1, 4 (Pa. Super. 2024). A petitioner raising a **Batson** claim under the PCRA must prove there was "actual, purposeful discrimination by a preponderance of the evidence," and "[a] finding by the trial court as to an absence of discriminatory intent must be given great deference on appeal." **Commonwealth v. Sepulveda**, 55 A.3d 1108, 1132 (Pa. 2012).

Smith acknowledges that Trial Counsel did make two **Batson** challenges at different times during jury selection, the latter when the Commonwealth struck a potential juror who was Native American. Smith summarizes that in response to the second **Batson** challenge, the trial court admonished the Commonwealth to articulate specific reasons for striking a juror. Despite this exchange, Smith contends Trial Counsel was ineffective for not "effectively advocat[ing] for the removal of the putative offending juror" and, again, not

---

[9] **Batson v. Kentucky**, 476 U.S. 79 (1986).

"forcefully argu[ing]" that the Commonwealth's conduct was discriminatory. Smith's Brief at 46.

By way of background, we note the PCRA court summarized the relevant portions of jury selection. The Commonwealth used peremptory strikes to remove three potential jurors who were, respectively: white; Hispanic or another race; and black and Hispanic. Trial Counsel argued the Commonwealth had no nondiscriminatory reason for the latter two strikes and was showing a "pattern" of exercising its peremptory strikes according to race. N.T. Trial Vol. I, 9/10/12, at 128. The trial court disagreed, reasoning the Commonwealth did accept five jurors, out of nine, who were African American or Asian, and thus denied relief.

Subsequently, Trial Counsel renewed his **Batson** challenge when the Commonwealth struck a juror who identified as Native American. The trial court directed the Commonwealth to state its reason for striking the juror, and the Commonwealth replied that: (1) the juror had "very long hair," "was younger," worked in retail, was single, and had a child; (2) the juror had "a lot of responsibility;" and (3) the Commonwealth believed it "could find a better juror." *Id*. at 149-50. In response, Trial Counsel argued that the Commonwealth's reasons were discriminatory under **Batson**, and requested the trial court **to seat** this juror. The trial transcript does not indicate whether the trial court directed this juror to be seated.

In addressing Smith's eighth issue, the PCRA court explained that the trial record did not identify the race of: the venirepersons in the jury pool; the venirepersons remaining after challenges for cause; the jurors ultimately selected; nor the jurors struck by Trial Counsel but who were acceptable to the Commonwealth. The PCRA court found that in the absence of such information, Smith's *Batson*-based ineffectiveness claim must fail.

First, we observe that again, Smith does not address any of this well-reasoned discussion by the PCRA court. Second, his argument on appeal — that Trial Counsel was ineffective for not advocating "for the **removal** of the putative offending juror" — is not clear. **See** Smith's Brief at 46 (emphasis added). A proper **Batson** argument in this context would be that the Commonwealth improperly used a peremptory strike against a potential juror based on race alone, and thus the juror should not have been excluded. Consistent with such a theory, here, Trial Counsel requested the trial court to **seat** the juror. To the extent present counsel merely made a typographical error in the brief, we would conclude no relief is due on his other contention — that Trial Counsel was ineffective for "meekly" raising the **Batson** challenge. **See id**. Trial Counsel raised two **Batson** challenges, the latter of which resulted in the trial court's requirement that going forward, the Commonwealth must state its reasons for striking a juror. Additionally, as the PCRA court discussed, by the time of the first **Batson** challenge, the Commonwealth had accepted five jurors, out of nine, who were African

American or Asian. Based on our review, we discern no error in the PCRA court's analysis. Accordingly, Smith's eighth issue merits no relief.

In his ninth issue, Smith claims PCRA Counsel was ineffective for not raising a claim that Trial Counsel was ineffective for not interviewing Green or calling him as a witness at trial. In claiming that defense counsel was ineffective for failing to call a certain witness, a petitioner must

> prove (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

**Commonwealth v. Medina**, 209 A.3d 992, 998 (Pa. Super. 2019) (citation omitted).

As stated above, Smith avers PCRA Counsel was ineffective for not presenting a claim that Trial Counsel was ineffective for not interviewing Green, or calling him as a witness at trial. In support, Smith first maintains that there was no forensic evidence, and instead, the Commonwealth's case was dependent on the reliability of its witnesses. Additionally, Smith contends that if Green were in the front passenger seat of the van during the shooting, he would have had "the best view of the shooter." Smith's Brief at 49. Smith avers that Green was identified as a witness in the discovery provided to the defense, but Trial Counsel did not make any attempt to contact Green. Smith now claims that had Trial Counsel interviewed Green, counsel would have learned that: (1) Green told detectives he saw the shooter "for a split second"

and did not know who the shooter was; but (2) detectives confiscated $750 from Green, "tried to force [him] to identify" Smith as the shooter, and told Green he could not "leave until he confirmed everything they already knew." *Id*. at 49-50, 52.

In addressing Smith's ninth issue, the PCRA court noted that PCRA Counsel did raise a claim, in the amended PCRA petition, that Trial Counsel was ineffective for not interviewing or calling to testify Green, and that the PCRA court convened an evidentiary hearing so that Smith could present Green as a witness. Although Green was subpoenaed, he did not appear, and thus Smith was unable to call him as a witness. The PCRA court further noted that Smith provided no explanation why Green failed to appear at the PCRA hearing, and in any event, Smith did not show Green was willing and able to testify at trial. The PCRA court also found that Smith failed to show how Green's testimony would have aided his defense, where Smith's own amended PCRA petition acknowledged that Green told detectives he did not know who the shooter was and had "barely seen his face." PCRA Court Opinion, 3/20/23, at 25.

Based on our review, we discern no error in the PCRA court's analysis. Again, Smith fails to address the PCRA court's reasoning. Our review of the record reveals that neither the amended PCRA petition nor Green's purported affidavit asserted that Green was available and willing to testify at trial. *See Medina*, 209 A.3d at 998. Furthermore, in arguing that Green would have

had a good view of the shooter, Smith ignores his own, earlier assertion that Green stated he did not see the shooter's face. We thus agree that Smith has not shown how the absence of Green's testimony so prejudiced him as to have denied him a fair trial. *See Medina*, 209 A.3d at 998. Accordingly, we agree with the PCRA court that no relief is due on Smith's ninth issue.

In his final issue, Smith asserts that the multiple instances of Trial Counsel's ineffectiveness combine to establish prejudice and a due process violation. This Court has explained:

> "[N]o number of failed [] claims may collectively warrant relief if they fail to do so individually." However, . . . this principle applies to claims that fail because of lack of merit or arguable merit. When the failure of individual claims is grounded in lack of prejudice, then the cumulative prejudice from those individual claims may properly be assessed.

*Sandusky*, 203 A.3d at 1102 (citation omitted).

Smith asserts that while each of his above claims alone entitles him to relief, the cumulative effect of Trial Counsel's multiple instances of ineffective assistance was to render his trial fundamentally unfair. Smith contends he was denied his right to due process and a fair trial.

The PCRA court addressed Smith's final issue and rejected his claim of a cumulative effect of Trial Counsel's alleged ineffective assistance. The PCRA court reasoned that none of his claims established any prejudice. We conclude that the PCRA court did not err in denying Smith's claims of Trial Counsel's alleged ineffectiveness. In so doing, we incorporate our above discussions of each of Smith's claims. Furthermore, we determine Smith has not established

- 31 -

he is entitled to a remand for the PCRA court to hold an evidentiary hearing on his new claims of PCRA Counsel's ineffectiveness. **See Parrish**, 273 A.3d at 1003 n.11. Accordingly, we affirm the order denying his PCRA petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/10/2024